Belknap,
No. 5717.

### CARL N. RAUTENBERG & a.

*v.*

### ALBERT MUNNIS & a.

Argued February 7, 1968.
Decided April 30, 1968.

*Wescott, Millham & Dyer* ( *Mr. Harold E. Wescott* orally ), for the plaintiffs.

*Upton, Sanders & Upton* ( *Mr. J. Gilbert Upton,* orally ), for the defendants.

DUNCAN, J. This is a motion by the plaintiffs for a new trial in an action to determine a boundary line. The case has twice been before this court, *Rautenberg* v. *Munnis,* 107 N. H. 446; *Rautenberg* v. *Munnis,* 108 N. H. 20. After the last cited opinion was handed down the motion for a new trial referred to in the first was heard by the Superior Court ( *Grant,* J. ) and denied.

The motion is founded upon the discovery of new evidence, in the form of a plan dated 1902, which the plaintiffs allege "clearly indicates that the boundary line . . . is as claimed by the petitioners." The Trial Court found that the parties were not at fault in failing to discover the plan prior to the original trial, but also found that the plan "only confuses the issue and falls short of the requirements of RSA 526:1." The questions raised by the plaintiffs' exception to denial of this motion were reserved and transferred by the Presiding Justice.

The findings which are prerequisite to the granting of a new trial under RSA 526:1, on the ground of newly discovered evidence, have long been clearly defined. A new trial will be considered to be equitably required only when the following conditions are met: ( 1 ) that the moving party was not at fault for not discovering the evidence at the former trial; ( 2 ) that the evidence is admissible ( *Small* v. *Company,* 96 N. H. 265, 267 ), material to the merits, and not cumulative; and ( 3 ) that it must be of such a character that a different result will probably be reached upon another trial. *McGinley* v. *Railroad,* 79 N. H. 320; *Haney* v. *Burgin,* 106 N. H. 213, 218.

The issue presented by the motion is one of fact for the Trial Court, and its decision is binding in this court unless it can be said to conclusively appear that a different result is probable, so that the Trial Court's conclusion is clearly unreasonable. *Cf. McGinley* v. *Railroad, supra,* 322.

As appears from the opinion in *Rautenberg* v. *Munnis,* 108 N. H. 20, *supra,* the dispute centers about a common boundary line which constitutes the plaintiffs' northerly boundary and the defendants' southerly line. The westerly terminus of the line is not in dispute. The easterly terminus was described in the deed to the plaintiffs in 1950 as a "pointed boulder at the shore with an iron pipe driven on the shore side." This they claimed at the former trial was at a location then referred to as "point D." The defendants, whose predecessor in title was grantee under the

first conveyance out by Jones, the common grantor of the parties, claim that the easterly terminus was an "iron set in a large boulder near high water mark at the shore" as specified in the deed from Jones to Flanders. Their evidence was that this point, called "point K" was marked by a drill hole in such a boulder, in which the "iron" had never been set. Point K was about 150 feet southerly along the shore from point D. In finding point K to be the true bound, the Court at the first trial found "persuasive" the similarity between the drill hole in the boulder at that point, and the drill hole in the ledge at the northwest corner of the defendants' tract, which was an unquestioned monument there.

The plan which the plaintiffs now offer as newly discovered evidence is a blueprint entitled "Plan of Broad View Park on Shore of Lake Winnipesaukee, Alton, N. H." It bears the date 1902 and the name L. E. Scruton, C. E., who was an engineer, now deceased. The plan shows 97 shore lots, number 21 of which includes "Rum Point," and bears the name "Flanders" which appears to have been partially erased. This lot the plaintiffs contend is the lot described in the deed from Jones to the defendants' predecessor Flanders which was dated December 2, 1901 and recorded in October, 1903. It is not disputed that the plan was never recorded, and is not referred to in any deed involved in the litigation.

A comparison of the plan with the description in the Flanders deed discloses a number of discrepancies. While both indicate an iron hub as a monument at the northwest corner and the same measurement southwesterly to a "spotted pine," the plan indicates a "sp. birch" at the southerly end of a 111.3 foot measurement on the westerly line, while the deed refers to no such monument or measurement. The total length of the westerly boundary is the same, but the deed gives an "iron hub set in the ground" as the southerly terminus, while the plan shows no monument at the southwest corner. At the disputed southeasterly corner, the plan shows "an iron hub" by the shore line, while the deed refers to an "iron set in a large boulder near high water mark."

The adjoining lot, shown on the plan as number 22, in the locus of the plaintiffs' land, bears no resemblance to the tract conveyed by Jones in 1934 to the plaintiffs' predecessor, Rollins, and in 1950 by him to the plaintiffs. The plan shows a lot

measuring 180 feet along the road on the west; 261 feet on the south. on a course of north 79° 30″ west, and 100 feet on the east, across the shore line to the "iron hub," also marking the southeasterly corner of Lot 21. Proceeding southerly from Lot 22, Lots 23 through 31 all appear to be divided by boundaries running north 79° 30″ west, giving each lot a width from north to south of approximately 100 feet. As to these lots the plan shows no monuments of any description.

Thus the plan is significant only as it bears upon the lot now owned by the defendants, first described in the Flanders deed of 1901. It fails to support that deed's description of an "iron hub set in the ground" at the southwest corner of the tract, but confirms the deed description of the common boundary as 250 feet in length. It indicates at the southeast corner an "iron hub" at the water mark, rather than an "iron set in a large boulder near high water mark" as specified by the Flanders deed or a "pointed boulder . . . with iron pipe driven on shore side" as claimed by the plaintiffs. It gives no area for the lot, and no course for the disputed line.

As argued by the defendants, the course of the disputed line on the plan appears to run approximately south 63 or 64 degrees east striking the shore line fifty feet or more below the bound claimed by the plaintiffs. The plaintiffs offer to prove that "after allowance for changes in the magnetic field over the intervening years" the line on the plan is only four degrees below the line claimed by them, but is twenty-nine degrees above the line found by the Trial Court. In any event it must be compared with the course of "south about 73 degrees east," as given in the deed to the plaintiffs, or south 74 degrees 40 minutes east, as surveyed by their surveyor to the point D; and similarly, with south 44 degrees and 22 minutes east (or nearly due southeast) which is the course of the line to point K, as claimed by the defendants.

It is apparent, however, that as evidence of the location of the southeasterly end of the common boundary line the plan would lend dubious support to the plaintiffs' claim. The plan's designation of an "iron hub" at the northwest and southeast corners only, tends to confirm the Trial Court's previous finding of similarity in the two drill holes located at these corners where no iron hubs were found. The deed given by Jones to Rollins in 1934, which referred to the 1901 deed to Flanders, and described

the southeasterly corner as a "point . . . *supposed to have been marked* by an iron set in a large boulder near high water mark" ( italics supplied ), would continue to cast doubt upon the accuracy both of the plan and of the plaintiffs' contention. The Scruton map fails to resolve other discrepancies between the various deeds and the claim of the plaintiffs. The absence of any reference to it in the conveyances, and of any record of it in the registry serves to further detract from its authority. The likelihood of acceptance of its location of the disputed line in preference to both of the claims presented at the trial appears to be minimal.

The finding and ruling of the Trial Court that the plan "only confuses the issue and falls short of the requirements of RSA 526:1" cannot be held to be plainly unreasonable. "The petition was heard by the judge who presided at the trial and it would be a very clear case which would permit his conclusion of the probable effect of the new evidence upon another trial to be classed as unreasonable." *McGinley* v. *Railroad, supra,* 79 N. H. 320, 322.

*Exception overruled.*

All concurred.