Hillsborough
No. 84-274

THE STATE OF NEW HAMPSHIRE

v.

GEORGE W. ABBOTT

December 5, 1985

*Stephen E. Merrill*, attorney general (*T. David Plourde*, assistant attorney general, on the brief and orally), for the State.

*Joanne S. Green*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

JOHNSON, J.    In this appeal from his conviction for second degree murder, the defendant raises several issues: (1) whether the evidence was sufficient to support the jury's finding that he was sane; (2) whether the New Hampshire rule that sanity is a question of fact for the jury violates due process; and (3) whether the Trial Court (*Goode*, J.) erred in denying the defendant's motion for a new trial based upon newly discovered evidence. We affirm.

On June 7, 1983, David Staples, the defendant's roommate, was stabbed to death. Abbott telephoned the police and two hours later confessed to the crime. During his interview with the police, Abbott was able to recount clearly the events surrounding the murder, although he made some statements which appeared delusional. He was indicted for first degree murder and, pursuant to an agreement with the State, agreed to waive indictment on a charge of second degree murder and to enter a plea of not guilty by reason of insanity to that charge.

The defendant has a long history of mental illness, and has been in and out of psychiatric hospitals during the past twenty years. At trial, the defendant's mother testified to the defendant's history of mental illness, and stated that she noticed warning signs in the defendant's behavior prior to the murder which were typical of behavior that usually preceded a psychotic episode. The defendant introduced the testimony of former Lieutenant Gaulin of the Manchester Police Department, who had interviewed the defendant after the murder and concluded that the defendant was "crazy," although the lieutenant admitted that the defendant had correctly answered questions and had been able to give a statement.

Mr. Bramante, the defendant's employer at The Movies, a movie theatre in Manchester, testified to his observations of the defendant's behavior approximately one to two weeks prior to Staples' death. Mr. Bramante stated that the defendant's behavior at work had become "very strange." He testified that he moved the defendant to an upstairs booth, away from the ticket counter, because the defendant could no longer deal with the people. Mr. Bramante related other instances of strange conduct, including an incident in which the defendant stared at himself in a mirror in the theatre's lobby for a long time, became tearful, and then smiled and laughed at himself, and walked away. In the projection booth, only hours

before the stabbing, the defendant told Mr. Bramante that the film being shown, which he had seen twelve times, was continually edited, and was different every time he saw it.

Two psychiatrists testified at trial. Dr. Emery, who testified on behalf of the defendant, stated that the defendant suffered from schizophrenia, and was in the midst of an acute psychotic episode on June 7th, the day of the killing. Dr. Emery believed that, to a reasonable degree of medical certainty, this illness caused the defendant to kill David Staples.

The State called Dr. Drukteinis, who also testified that the defendant suffered from a serious mental illness. He diagnosed the illness as schizo-affected disorder, which differs from schizophrenia in that the former permits fairly normal functioning following a psychotic episode. Dr. Drukteinis stated that although it sounded as if the defendant was experiencing a psychotic episode on June 7th, he could find no link between the defendant's bizarre thinking and the killing. The doctor also noted that the defendant knew that he was taking a human life, and he testified to his observations of other aspects of the defendant's behavior which suggested that the defendant was not delusional at the time of the killing.

In addition, the State presented the testimony of several police officers. They stated that although the defendant appeared despondent and dazed, he was able to understand and articulate answers to their questions.

At the close of all of the evidence, the defendant moved for a directed verdict of not guilty by reason of insanity, which was denied subject to exception. The jury found that the defendant was sane at the time of the murder. The defendant filed motions to set aside the verdict and for a new trial based upon newly discovered evidence. These motions were denied, and exceptions were noted. This appeal followed.

## I. *Sufficiency of the Evidence*

The defendant asserts that the trial court erred in denying his motion to set aside the jury's finding of sanity, because the evidence was legally insufficient to support the jury's verdict. We disagree.

■■ The issue of sanity is a question of fact for the jury, and we will uphold the jury's determination unless no rational trier of fact could have come to the same conclusion. *State v. Novosel*, 120 N.H. 176, 185, 412 A.2d 739, 746 (1980) (citations omitted). We will view the evidence and all reasonable inferences therefrom in the light most favorable to the State. *State v. Rullo*, 120 N.H. 149, 151, 412 A.2d 1009, 1011 (1980) (citations omitted).

■■ The insanity defense is an affirmative defense which requires that the defendant establish, by a preponderance of the evidence, that he lacked responsibility for the crime at the time of the crime. *Novosel v. Helgemoe*, 118 N.H. 115, 127, 384 A.2d 124, 131 (1978); RSA 628:2, II (Supp. 1983); *see* RSA 626:7, I(b). This apportionment of the burden of proof does not impinge upon any constitutional guarantee. *Rullo, supra* at 152, 412 A.2d at 1011 (citing *Patterson v. New York*, 432 U.S. 197 (1977)). The defendant argues that all of the evidence points to insanity, and that the State failed to produce any evidence to overcome his insanity defense.

The defendant presented several lay witnesses who testified that the defendant was suffering from a serious mental illness. In addition, Dr. Emery, a psychiatrist, testified that the killing of David Staples was the result of the defendant's acute psychotic episode. The State presented witnesses who testified that the defendant was able to understand and respond clearly to directions and to questions after the murder. Dr. Drukteinis stated that he could find no causal link between the defendant's delusions and the murder. He further cited evidence that the defendant was not delusional at the time of the killing.

■ The jury was free to reject the testimony of Dr. Emery, and accept the testimony of Dr. Drukteinis. *See Rullo, supra* at 152, 412 A.2d at 1012. The jury could reasonably have found, even if it believed that the defendant was suffering from a mental illness, that the killing of David Staples was not a product of that mental illness and that the defendant therefore was criminally responsible for the murder. *See State v. Pike*, 49 N.H. 399 (1870); *State v. Jones*, 50 N.H. 369 (1871). Viewing all of the evidence in the light most favorable to the State, we cannot say that no rational trier of fact could have concluded that the defendant was sane.

## II. *The Insanity Rule*

The defendant next contends that the New Hampshire rule that sanity is a question of fact for the jury violates due process, because no jury verdict of sanity is subject to appellate review. We disagree.

■■ The New Hampshire rule on insanity has long been that the question of whether a defendant is mentally ill, and whether the crime is a product of that illness, is a question of fact for the jury. *Pike, supra* at 407–08; *see Jones, supra* at 398. No specific test or criterion for determining the issue of mental illness exists in New Hampshire. *State v. Sadvari*, 123 N.H. 410, 414, 462 A.2d 102, 104 (1983). "It is often difficult to ascertain whether an individual had a

mental disease, and whether an act was the product of that disease; but these difficulties arise from the nature of the facts to be investigated, and not from the law; they are practical difficulties to be solved by the jury, and not legal difficulties for the court." *Pike, supra* at 438.

■■ The material issue raised by the insanity defense is whether insanity negated criminal intent. *State v. Long*, 90 N.H. 103, 106, 4 A.2d 865, 867 (1939); *see* RSA 628:2 (Supp. 1983). Tests of capacity are "all clearly matters of evidence, to be weighed by the jury upon the question whether the act was the offspring of insanity: if it was, a criminal intent did not produce it; if it was not, a criminal intent did produce it, and it was crime." *Jones, supra* at 398–99.

■ This rule does not violate due process. N.H. CONST. pt. I, art. 15. This court has long recognized the impossibility of adequately defining the term "insanity" and constructing a legal test to determine whether a criminal defendant is insane. We believe that the insanity rule properly characterizes the determination of sanity as a factual one left to the trier of fact. The defendant is given notice and an opportunity to be heard; he is free to present any and all evidence of his mental state at the time of the crime.

■■ A jury verdict of sanity is not unreviewable; it is always subject to appellate review. As we stated in our discussion of the defendant's challenge to the sufficiency of the evidence, a jury verdict will be overturned on appeal if no rational trier of fact could have come to the same conclusion. *State v. Novosel, supra* at 185, 412 A.2d at 746 (citations omitted). The jury may not enter a verdict wholly unsupported by the evidence. Thus, we can conceive of no way in which the defendant's due process rights were violated by the New Hampshire rule on insanity.

### III. *Newly Discovered Evidence*

The defendant finally argues that the trial court erred in denying his motion for a new trial based upon newly discovered evidence. We uphold the decision of the trial court.

Defense counsel became aware of a new witness, Greg Bennett, after the jury rendered its verdict. At a hearing held on the defendant's motion for a new trial, Bennett testified that he had observed the defendant acting very strangely at The Movies in Manchester in June, 1983. He asked the defendant about the number of customers required in order to show the film, and the defendant replied, without eye contact, "It's a nice night to be alone." The witness commented on the defendant's strange behavior to the person behind

him, who agreed that the defendant was "very weird." The trial judge denied the defendant's motion, holding that Mr. Bennett's testimony was cumulative and would not yield a different result upon retrial.

■■ The question of whether a new trial should be granted on the basis of newly discovered evidence is a question of fact for the trial court. *State v. Kelly*, 120 N.H. 904, 906, 424 A.2d 820, 822 (1980) (citing *Small v. Company*, 96 N.H. 265, 267, 74 A.2d 544, 545 (1950)). We will sustain the trial court's decision "unless it can be said to conclusively appear that a different result is probable, so that the Trial Court's conclusion is clearly unreasonable." *Rautenberg v. Munnis*, 109 N.H. 25, 26, 241 A.2d 375, 376 (1968) (citation omitted).

■■ In order to obtain a new trial on the basis of newly discovered evidence, the moving party must establish:

> "'(1) that the moving party was not at fault for not discovering the evidence at the former trial; (2) that the evidence is admissible [citation omitted], material to the merits, and not cumulative; and (3) that [the evidence is] of such a character that a different result will probably be reached upon another trial.' [citations omitted]."

*Kelly, supra* at 906, 424 A.2d at 822 (quoting *Burroughs v. Wynn*, 117 N.H. 123, 126, 370 A.2d 642, 644 (1977); *Rautenberg v. Munnis*, 109 N.H. 25, 26, 241 A.2d 375, 376 (1968)). The State agrees that the witness was not known prior to trial, and that the defendant is not at fault for failing to discover the evidence prior to the jury's verdict. We hold, however, that the trial court was correct in finding that Mr. Bennett's testimony was cumulative and would not yield a different result on retrial, and we find no error in its denial of the motion for a new trial.

■ Cumulative evidence is defined as "'additional evidence of the same kind to the same point . . . .' [E]vidence which goes to a point upon which no evidence was adduced at the former trial is not cumulative." *Watkins v. Railroad*, 80 N.H. 468, 476–77, 119 A. 206, 211 (1922). The testimony of Mr. Bennett is lay witness testimony offered to show that the defendant was mentally ill at the time of the murder. This testimony is evidence of the same kind to the same point as the testimony of Mr. Bramante, the defendant's employer.

The defendant argues that, unlike Mr. Bramante, Mr. Bennett is a disinterested witness because he does not know the defendant. Mr. Bramante is described as the defendant's "friendly employer," but there is no evidence that he was a biased witness. We therefore find

that Mr. Bennett's testimony is cumulative, and not of such a character that a different result would probably be reached at a new trial. Given all the testimony introduced at trial concerning the defendant's mental illness, Mr. Bennett's testimony recounting one incident involving inappropriate behavior by the defendant is unlikely to alter the jury's determination of the defendant's sanity.

Finding no error, we affirm the defendant's conviction.

*Affirmed.*

All concurred.