Belknap
No. 89-033

THE STATE OF NEW HAMPSHIRE

v.

RUSSELL THOMAS

July 13, 1990

*John P. Arnold,* attorney general (*Tina Schneider,* assistant attorney general, on the brief and orally), for the State.

*James E. Duggan,* chief appellate defender, of Concord, by brief and orally, for the defendant.

THAYER, J.   In this appeal from his jury conviction of first degree assault, RSA 631:1, II, the sole issue raised by the defendant, Russell Thomas, is that the Superior Court (*O'Neil,* J.) erred in denying his motion to reopen the case in the midst of jury deliberations in order to allow the defense to present an additional witness. Finding no error, we affirm the decision of the trial court.

The indictment returned by the grand jury in this case charged that Mr. Thomas "did knowingly cause bodily injury to another by means of a deadly weapon." At trial, however, the prosecution was unable to provide the jury with any direct evidence establishing the defendant's guilt. There were no eyewitnesses to the crime; in fact, the victim was himself profoundly retarded, blind, and nonverbal. Moreover, no demonstrative evidence linking Mr. Thomas to the assault, such as the weapon used, fingerprints or blood samples, was ever produced for the jury's consideration. Thus, to a certain extent, the State sought to prove its case through a systematic process of elimination during which all other individuals potentially having access to the victim or the location where he was assaulted were excluded from suspicion.

In addition, the State's case hinged on the testimony of a key witness, Joseph Chaloux, who testified that while he and the defendant were both incarcerated at the Belknap County Jail, Thomas had told Chaloux that he, in fact, had committed the assault. More specifically, Chaloux told the jury that the defendant had shown him a newspaper article concerning the incident and that Mr. Thomas had initially professed his innocence. Chaloux further testified, however, that two or three days later the defendant had confessed his guilt, explaining that "[h]e did it with a pair of scissors." Chaloux went on to explain that Thomas, an employee of what is now called Laconia Developmental Services, had told him that he had assaulted the victim, a resident there, because Thomas "wanted to get back at the people for suspending him from work."

Chaloux also testified about conversations he had had with the defendant pertaining to matters seemingly unrelated to the assault. He told the jury that Thomas had informed him of an accident at the institution where "one individual had a piece of wire sticking out of

their [sic] face." In addition, the trial judge was made aware of the fact that Thomas had confided to Chaloux that the defendant possessed a police officer's hat and kept it at his home.

On the basis of this and other information supplied to the jury, the State rested. The defense, choosing not to present any witnesses, did so as well. However, after the case had been submitted to the jury, but before a verdict had been reached, the defendant moved to reopen on the ground that a previously undiscovered individual, possessing information tending to discredit the testimony of Joseph Chaloux, had come forward.

Apparently, at approximately 2:53 p.m. on December 1, 1988, after both the prosecution and the defense had rested and while the jury charge was being delivered and the closing arguments of counsel given, John Leroux, an inmate at the jail, telephoned defense counsel's office, stating that he had information concerning the credibility of Joseph Chaloux. In substance, Leroux claimed "that Chaloux couldn't be telling the truth about what Thomas told him in connection with the alleged offense." Although a message was left with the clerk's office for Attorney Sisti, counsel for the defendant, Sisti was not made aware of this development until later that evening. The following morning, however, Attorney Sisti informed the judge and the prosecutor of the existence of Mr. Leroux and of the gist of his telephone conversation. Defense counsel immediately moved that the case be reopened and that Leroux be ordered to testify.

Before a decision on the motion to reopen was rendered, Bjorn Lange, counsel of record for John Leroux, was notified and asked to go to the jail to meet with his client. Once the meeting had taken place, a conference was held in chambers, during which Attorney Lange explained that it was his "impression from talking with John that John somewhat exaggerated the extent of his knowledge as to the defendant in this case." Lange tried "to give the court and counsel a verbatim account of what [his] client told [him]." Basically, Leroux offered to rebut Chaloux's testimony concerning the defendant's admission of guilt by testifying that (1) while Leroux was present, the defendant did not speak with other inmates regarding the charges pending against him; (2) Chaloux asked the other inmates about their cases; and (3) Chaloux was a liar.

Armed with this information, the defense requested that the case be reopened, "that John Leroux be ordered into the courtroom as a defendant's witness, and that he be examined before the jury" on the ground that the testimony he would give would be material and rele-

vant information "focusing primarily on the credibility of Mr. Chaloux." The defense went on to argue that the information was "material as it [was] the only evidence that directly impact[ed] . . . on the behavior of Mr. Thomas in the jail environment." The defense further argued that Leroux's testimony was "capable of impacting on the jury in that it tend[ed] to cut across the State's contention that Chaloux heard any conversation from Thomas regarding . . . the first degree assault charge."

The trial court declined to reopen the case, however, finding "that there was not enough as far as the Court [was] concerned to require Mr. Leroux's testimony." The court noted that although Leroux seemed "to be indicating that Thomas didn't tell Chaloux anything," the basis for this allegation was a complete mystery, as Leroux was never "in the position where he could say that they didn't have any conversation." The court went on to explain that the proffered testimony would be cumulative and do nothing "but confuse this jury." Furthermore, the court added that it was not satisfied that there was a probability that the verdict would be any different if Leroux were allowed to testify. Finding that to reopen the case at this particular juncture would not be "in the best interests of justice," the trial court, in an exercise of its discretion, denied the defendant's motion.

■ The defendant now argues to this court that "the trial court applied an erroneous standard in exercising its discretion and abused its discretion in denying the . . . motion to reopen." In his brief, the defendant correctly points out that the timing of the request to reopen determines the standard to be applied in reaching the decision on that issue. Prior to submission to the jury, a party seeking to reopen a case need only show "good cause." SUPER. CT. RS. 70, 115; *State v. Comtois*, 122 N.H. 1173, 1175, 453 A.2d 1324, 1325 (1982). On the other hand, once a verdict has been reached, the moving party bears a much heavier burden since it must show, *inter alia*, "that a different result will probably be reached upon another trial." *State v. Abbott*, 127 N.H. 444, 450, 503 A.2d 791, 795 (1985) (citations omitted). In situations falling between these two, where the motion to reopen is filed during jury deliberations, we have held that "[t]he decision whether or not to reopen a criminal case is within the discretion of the trial court." *State v. Booten*, 114 N.H. 750, 761, 329 A.2d 376, 384 (1974), *cert. denied*, 421 U.S. 919 (1975) (the trial court allowed the State to reopen for the limited purpose of moving for admission of two items into evidence).

In support of his position that the trial court, when exercising its discretion, used an incorrect standard, the defendant calls our attention to the trial judge's comment that he was not satisfied "that there would be a probability that the verdict would be any different." The defendant acknowledges that the judge, having entertained the arguments of both parties, concluded that Leroux's testimony would be cumulative and only serve to confuse the jury. However, choosing to focus on the trial judge's later statement regarding the probability of a change in the verdict, the defendant seems to argue that the judge erroneously based his decision on the fact that he was not satisfied that allowing the testimony would probably cause the verdict to be different. We need not linger on this point because it is clear from the record before us that, even applying the least stringent test, the reopening of this case was neither warranted nor required; the judge did not abuse his discretion.

The defendant claims that (1) the proffered evidence "was not cumulative and was highly relevant;" (2) through no lack of diligence on the part of counsel, the evidence was not available to the defense during trial; and (3) the State did not claim that it would suffer any prejudice in the event that the motion to reopen was granted. As previously mentioned, the defendant asserts that, had the case been reopened and John Leroux brought in to testify, Leroux would have told the jury that for a few days he and the defendant were on the same tier at the Belknap County Jail and that, at least while Leroux was present, the defendant did not speak with the other inmates about his case. Leroux could not say, however, that Thomas did not discuss his case with Chaloux or that Chaloux was lying about Thomas' confession, because Leroux simply had no personal knowledge whatsoever concerning conversations between the defendant and Chaloux. The three men were never all on the same tier at the same time.

Moreover, it was clear from the testimony produced at trial that Thomas had indeed conversed with Chaloux. For instance, absent discussions with Thomas, Chaloux could not have known that the defendant kept a police officer's hat at his home. In addition, Chaloux could not have known about the earlier incident at Laconia Developmental Services involving a small piece of wire lodged in a resident's face. Given the fact that Thomas clearly had discussions with Chaloux and that Leroux was unable to say that Chaloux was lying about the defendant's confession, the proffered testimony on this issue was insignificant and immaterial.

In addition, the defense argues that Leroux would have told the jury that Chaloux asked other inmates about the charges pending against them. Chaloux, however, never said that Thomas' confession was unsolicited. In fact, during the course of his testimony, Chaloux admitted that he had previously "ratted" on other inmates.

Finally, the defendant claims that Leroux would have testified that Chaloux was a liar. Provided such testimony would have been admissible, it would have been cumulative, as during cross-examination, Chaloux described himself as a liar.

In light of the above discussion, we hold that the trial judge did not abuse his discretion in denying the defendant's motion to reopen this case.

*Affirmed.*

HORTON, J., did not sit; the others concurred.