### George ABBOTT

#### v.

### Michael CUNNINGHAM, Warden, New Hampshire State Prison.

#### Civ. No. 90–474–D.

United States District Court, D. New Hampshire.

June 13, 1991.

**15.** Under 29 U.S.C.A. § 1132(g) "interest shall be determined by using the rate provided under the    plan."

Paul Twomey, Chichester, N.H., for plaintiff.

Mark E. Howard, Asst. Atty. Gen., Concord, N.H., for defendant.

## ORDER

DEVINE, Chief Judge.

George Abbott, an inmate at the New Hampshire State Prison, brings this habeas corpus petition alleging that his constitutional rights were violated by the insanity defense jury instruction given at his murder trial. Authority to review the instant petition is founded on 28 U.S.C. §§ 2241(a) and 2254.

On October 23, 1990, the court found that Abbott had set forth a cause of action and had exhausted his remedies in state court. *See State v. Abbott,* 127 N.H. 444, 503 A.2d 791 (1985). Accordingly, it was ordered that the instant petition be served on the Warden of the New Hampshire

State Prison and the Attorney General of the State of New Hampshire.[1]

Presently before the court are respondent's motion to reconsider the October 23, 1990, order and respondent's motion to dismiss the petition.

### Factual Background

The facts underlying petitioner's conviction were summarized by the New Hampshire Supreme Court as follows:

On June 7, 1983, David Staples, the defendant's roommate, was stabbed to death. Abbott telephoned the police and two hours later confessed to the crime. During his interview with the police, Abbott was able to recount clearly the events surrounding the murder, although he made some statements which appeared delusional. He was indicted for first degree murder and, pursuant to an agreement with the State, agreed to waive indictment on a charge of second degree murder and to enter a plea of not guilty by reason of insanity to that charge.

*Abbott, supra,* 127 N.H. at 446, 503 A.2d at 792–93.

After raising the affirmative defense of insanity, Abbott went to trial solely on the issue of whether he was sane at the time he killed his roommate.

At his trial Abbott offered testimony regarding his long history of mental illness from a variety of lay witnesses. Two psychiatrists also testified at the trial.

Dr. Emery, who testified on behalf of the defendant, stated that the defendant suffered from schizophrenia, and was in the midst of an acute psychotic episode on June 7th, the day of the killing. Dr. Emery believed that, to a reasonable degree of medical certainty, this illness caused the defendant to kill David Staples.

The State called Dr. Drukteinis, who also testified that the defendant suffered from a serious mental illness. He diag-

1. In a previous attempt to gain habeas corpus review of this matter, the court found that Abbott had failed to meet the requirement of 28 U.S.C. § 2254(b) that he exhaust his state reme- dies, and dismissed his petition as required by *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

nosed the illness as schizo-affected disorder, which differs from schizophrenia in that the former permits fairly normal functioning following a psychotic episode. Dr. Drukteinis stated that although it sounded as if the defendant was experiencing a psychotic episode on June 7th, he could find no link between the defendant's bizarre thinking and the killing. The doctor also noted that the defendant knew that he was taking a human life, and he testified to his observations of other aspects of the defendant's behavior which suggested that the defendant was not delusional at the time of the killing.

*Abbott, supra,* 127 N.H. at 447, 503 A.2d at 793.

In addition to much testimony about his mental condition, there was also evidence which "suggested that [Abbott] had a much more pedestrian motivation for [the] killing" based upon unfulfilled "expectations regarding the nature of their relationship" and Abbott's resulting resentment. Respondent's Motion to Dismiss at 3–4.

During his charge to the jury regarding the affirmative defense of insanity, Judge Goode, sitting in Hillsborough County (New Hampshire) Superior Court, stated in relevant part:

> You should consider all of the evidence in this case, that is, both direct and circumstantial evidence, in deciding whether the defendant was insane or sane at the time of this event.
>
> Let me discuss with you briefly this matter of insanity. Under the laws of the State of New Hampshire a person who is insane at the time he acts is not criminally responsible for his conduct. Mr. Abbott in this hearing has the burden of proving to you members of the jury by a preponderance of the evidence that he was, in fact, insane at the time of the acts alleged in the indictment. In layman's terms, this means simply that he must show you members of the jury that it is more likely than not that he was insane at that time. There is no simple test to use in deciding whether Mr. Abbott was insane at the time of the offense. Insanity is merely a question of fact to be decided by you based on all of the evidence. You may consider the testimony of both expert psychiatrists and the testimony of lay persons who were in a position to observe Mr. Abbott around that period of time. You may consider a variety of other factors, including the presence or absence of a previous mental illness, whether Mr. Abbott was suffering from delusions or hallucinations, whether Mr. Abbott acted impulsively or acted with cunning and plan in committing the acts. None of these is by itself a test for insanity, but each of these is an example of the type of factors that you may consider in reaching your decision on whether it was more likely or not that Mr. Abbott was insane at the time he committed the acts.

Trial Transcript, Vol. III, at 410–11 (reference is to the first of two pages numbered 411).

> Each of you has taken a solumn [sic] oath to faithfully apply the laws of the State of New Hampshire in your deliberations. Let me emphasize that the sole issue that you must decide is whether or not it is more likely that Mr. Abbott was insane on June 7th, 1983.
>
> Now in this state, jury, there are no legal rules which define either insanity or its effect on the accused. These are both questions of fact for you, the jury, to decide. Insanity is a question of fact to be decided by you, based on all of the evidence that has been presented to you that you will consider. Furthermore, insanity is not, under our law, limited to any clinical designations or to certain types of diseases. The New Hampshire rule on insanity was established over one hundred years ago and still stands as valid law. Neither delusions, nor knowledge of right or wrong, nor design or cunning in planning and executing the crimes and escaping or avoiding detection, nor ability to recognize acquaintances or to labor or transact business or manage affairs is, as a matter of law, a test of insanity, but all symptoms and all tests of insanity are purely matters of fact to be determined by the jury.

Whether the defendant was insane and whether the crimes were the product of such insanity are questions of fact for you to decide. You may presume that the defendant was sane. Sanity is inherent in human nature and is the natural and normal condition of mankind. Upon this issue the defendant himself has the burden of proof, as I have indicated. In other words, the defendant must establish for you more probably than not that he was insane in order to support his contention of insanity.

*Id.* at 412–13.

On February 15, 1984, the jury found defendant Abbott to be sane and guilty. Petitioner's Memorandum at 8. The court denied post-trial motions to set aside the verdict and for a new trial, and sentenced Abbott to fifteen (15) years to life in the New Hampshire State Prison. Respondent's Motion to Dismiss at 7. Abbott subsequently appealed to the New Hampshire Supreme Court, which unanimously affirmed his conviction. *Abbott, supra,* 127 N.H. 444, 503 A.2d 791. Petitioner filed an application for habeas corpus relief in this court on October 17, 1990.

### Discussion

#### 1. Motion to Reconsider

Respondent contends that Abbott has yet to meet the strictly enforced exhaustion requirement mandated by 28 U.S.C. § 2254(b) and (c). *See Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052, 2062–63, 80 L.Ed.2d 674 (1984). In support thereof respondent argues that in the instant habeas petition, Abbott raises a new due process claim challenging the "preponderance of the evidence" standard applied in insanity defense cases, which was never presented to the state court. For a claim to be exhausted, " 'the petitioner must have fairly presented the substance of his federal habeas claim to the state court before seeking federal review.... [T]he legal theory in the state and federal courts must be the same.' " *Martens v. Shannon,* 836 F.2d 715, 717 (1st Cir.1988) (quoting *Gagne v. Fair,* 835 F.2d 6, 7 (1st Cir.1987)) (citations omitted). In his response to the State's assertion, Abbott expressly withdraws any suggestion that he is raising a claim based on the burden of proof issue. Petitioner's Objection to Motion to Dismiss at 1. The court accordingly denies respondent's motion to reconsider, finding that Abbott has exhausted his state remedies. The court therefore turns to respondent's motion to dismiss and the merits of petitioner's constitutional claims.

#### 2. Due Process Claim

The thrust of petitioner's claim is that the New Hampshire insanity rule violates his right to due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution. Abbott contends that because the trial court's instructions to the jury did not contain "any legal definition or standard of insanity," they permitted arbitrary, nonreviewable, and nonreplicable results, Petitioner's Memorandum at 20, and prevented "adequate appellate review of the jury's functioning and judgment on the issue on insanity." Petitioner's Petition for Writ of Habeas Corpus at 4. Thus, Abbott argues that because under New Hampshire's insanity rule the question of a defendant's sanity is solely a matter of fact for the jury, without guidance from the court or the law, it is unconstitutional.

The State, on the other hand, contends that the choice of a particular insanity rule is a matter of basic state policy. New Hampshire has chosen to characterize its insanity doctrine as a question of fact for the jury which "permits the development of a theory of insanity unrestricted by legal definition and restricted only by medical fact." Respondent's Motion to Dismiss at 20–22. The State also strongly disputes Abbott's contentions that the jury is allowed unbridled discretion and that the New Hampshire rule precludes meaningful appellate review.

The Due Process Clause of the Fourteenth Amendment was " 'intended to secure the individual from the arbitrary exercise of the powers of government,' " *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) (quot-

ing *Hurtado v. California,* 110 U.S. 516, 527, 4 S.Ct. 111, 116–17, 28 L.Ed. 232 (1884)), and as such is the source of three different kinds of constitutional protection: (1) "it incorporates specific protections defined in the Bill of Rights;" (2) "it contains a substantive component ... which bars certain arbitrary government actions 're-gardless of the fairness of the procedures used to implement them;' " [and] (3) "it is a guarantee of fair procedure ...: the State may not execute, imprison, or fine a defendant without giving him a fair trial...." *Daniels, supra,* 474 U.S. at 337, 106 S.Ct. at 678 (Stevens, J., concurring in judgments) (footnotes omitted).

The court best understands Abbott's challenge to the New Hampshire insanity rule as a procedural due process claim.[2] "In a procedural due process claim, it is not the deprivation of property or liberty that is unconstitutional; it is the deprivation of property or liberty *without due process of law*—without adequate procedures." *Id.* at 339, 106 S.Ct. at 678 (emphasis in original). "However, a complaint does not state a valid procedural due process objection ... if it does not include a challenge to the fundamental fairness of the State's procedures." *Id.*

Here, Abbott clearly attacks the New Hampshire insanity doctrine as being an "ancient" practice which is fundamentally unfair because it does not instruct the jury as to what the legal definition of sanity or insanity is and does not give the jury any standard by which to weigh the evidence. Thus, argues Abbott, the jury is "unin-structed as to the law and unguided" as to how to make its determination on the issue of insanity. It is his position that, as a matter of due process, insanity should be defined for the jury, and the jury should be told what evidence is important and how to make their decision.

### a. The Supreme Court's View on the Insanity Defense

In cases challenging state criminal jury instructions in general, the United States Supreme Court has consistently deferred to the states. *See Cupp v. Naughten,* 414 U.S. 141, 149, 94 S.Ct. 396, 401, 38 L.Ed.2d 368 (1973) (" '[R]eview by this Court of state action expressing its notion of what will best further its own security in the administration of criminal justice demands appropriate respect for the deliberative judgment of a state in so basic an exercise of its jurisdiction.' ") (quoting *McNabb v. United States,* 318 U.S. 332, 340, 63 S.Ct. 608, 613, 87 L.Ed. 819 (1943)). *See also Fisher v. United States,* 328 U.S. 463, 476, 66 S.Ct. 1318, 1324–25, 90 L.Ed. 1382 (1946) ("The administration of criminal law in matters not affected by constitutional limitations or a general federal law is a matter peculiarly of local concern.").

Specifically, with respect to the insanity defense, the Supreme Court has stated:

> We cannot cast aside the centuries-long evolution of the collection of interlocking and overlapping concepts which the common law has utilized to assess the moral accountability of an individual for his antisocial deeds. The doctrines of *actus reus, mens rea,* insanity, mistake, justification, and duress have historically provided the tools for a constantly shifting adjustment of the tension between the evolving aims of the criminal law and changing religious, moral, philosophical, and medical views of the nature of man. This process of adjustment has always been thought to be the province of the States.

---

2. To the extent that Abbott's arguments implicate a fundamental right, the court notes that the United States Supreme Court has never held that there is a constitutional right to plead an insanity defense. *See Ake v. Oklahoma,* 470 U.S. 68, 91–92, 105 S.Ct. 1087, 1100–01, 84 L.Ed.2d 53 (1985) (Rehnquist, J., dissenting) ("It is highly doubtful that due process requires a State to make available an insanity defense to a criminal defendant.... I do not believe the Due Process Clause superimposes a federal stan-dard for determining how and when sanity can legitimately be placed in issue...."). Consistent with this notion, three states between 1979 and 1983—Idaho, Montana, and Utah—abolished insanity as a separate affirmative defense. *See Recent Developments—Due Process—Insanity Defense—Idaho Supreme Court Upholds Abolition of Insanity Defense Against State and Federal Constitutional Challenges.—State v. Searcy, 118 Idaho 632, 798 P.2d 914 (1990),* 104 Harv.L. Rev. 1132 (1991).

*Powell v. Texas,* 392 U.S. 514, 535–36, 88 S.Ct. 2145, 2156, 20 L.Ed.2d 1254 (1968). The United States Supreme Court has never articulated a constitutional definition of insanity. In fact, it has stated that "[n]othing could be less fruitful than for this Court to be impelled into defining some sort of insanity test in constitutional terms." *Powell, supra,* 392 U.S. at 536, 88 S.Ct. at 2156. Furthermore, when confronted with the argument that the Due Process Clause demanded that one definition of legal insanity be supplanted with another, the Supreme Court, consistent with its deference to the states, stated that the "choice of a test of legal sanity involves not only scientific knowledge but questions of basic [local legislative] policy as to the extent to which that knowledge should determine criminal responsibility." *Leland v. Oregon,* 343 U.S. 790, 801, 72 S.Ct. 1002, 1008, 96 L.Ed. 1302 (1952). Clearly, therefore, the choice as to how to determine criminal responsibility has been left to the states. *Powell, supra,* 392 U.S. at 536, 88 S.Ct. at 2156.[3]

### b. The New Hampshire Insanity Defense Doctrine

The New Hampshire Criminal Code defines insanity as follows:

**628:2 Insanity.**

I. A person who is insane at the time he acts is not criminally responsible for his conduct. Any distinction between a statutory and common law defense of insanity is hereby abolished and invoca-tion of such defense waives no right an accused person would otherwise have.

II. Insanity shall be an affirmative defense and the defendant shall have the burden of proving, by a preponderance of the evidence, that he lacked criminal responsibility as described in paragraph I.[4] Thus, the test for criminal insanity is whether insanity negated criminal intent. *State v. Shackford,* 127 N.H. 695, 701, 506 A.2d 315, 318 (1986).

The legislature did not establish a specific test or criterion for determining insanity, but continued to characterize the determination as a factual one for the jury. Insanity tests are "all clearly matters of evidence, to be weighed by the jury upon the question whether the act was the offspring of insanity: if it was, a criminal intent did not produce it; if it was not, a criminal intent did produce it, and it was crime."

*Id.* (quoting *State v. Jones,* 50 N.H. 369, 398–99 (1871)). "The legislature properly entrusted the determination of insanity to the jury, and the failure to delineate a legal standard concerning this factual matter is not an unconstitutional delegation of legislative authority." *Shackford, supra,* 127 N.H. at 701, 506 A.2d at 318–19.

Abbott argues that New Hampshire's "standardless" approach to the insanity defense leaves too much decisionmaking to the wisdom of juries. He portrays the situation in New Hampshire as one in which the jury receives virtually no guidance: no legal definition of sanity or insanity, no direction as to how to make its

---

**3.** As a matter within their purview, local jurisdictions have adopted a variety of definitions and rules governing the insanity defense. Under the *M'Naghten* rule (sometimes called the right-wrong test), the defendant is excused if he did not know what he was doing or did not know that what he was doing was wrong. *M'Naghten's Case,* 10 Cl. & Fin. 200, 8 Eng.Rep. 718 (H.L. 1843). Under the "irresistible-impulse test", the defendant is excused if he had a mental disease which kept him from controlling his conduct. Under the *Durham* Rule (a variation on "the New Hampshire rule", *see infra* ), the defendant is excused if his actions were the product of mental disease or defect. *Durham v. United States,* 214 F.2d 862 (D.C.Cir.1954), *overruled, United States v. Brawner,* 471 F.2d 969 (D.C.Cir.1972) (replacing the *Durham* Rule with the Model Penal Code, A.L.I. rule for the District of Columbia). Under the Model Penal Code, § 4.01, the defendant is excused if at the time of his conduct as a result of mental disease or defect he lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. *See generally* W. LaFave, *Criminal Law* §§ 36–38 (1972). *A general debate over the merits of a particular test for insanity, or in fact whether to even retain the defense, continues. See supra* note 2.

**4.** As of 1987, paragraph II was amended to read, "The defendant shall have the burden of proving the defense of insanity by clear and convincing evidence."

decision, and no standards against which to weigh evidence—all of which render the jury "free to disregard all the facts presented at trial and to render a verdict utterly unsupported by the evidence." Petitioner's Memorandum at 15. Abbott's position is that due process demands jury instructions which contain a legal definition of sanity or insanity. The court notes, however, that historically the function of the Fourteenth Amendment " 'is negative, not affirmative, and it carries no mandate for particular measures of reform.' " *Pacific Mut. Life Ins. Co. v. Haslip,* —— U.S. ——, ——, 111 S.Ct. 1032, 1054, 113 L.Ed.2d 1 (1991) (Scalia, J., concurring) (quoting *Ownbey v. Morgan,* 256 U.S. 94, 112, 41 S.Ct. 433, 438, 65 L.Ed. 837 (1921)). The issue this court must address, therefore, is not whether fundamental fairness demands a legal definition of insanity, per se, but whether the amount of jury discretion under the New Hampshire doctrine is fundamentally fair.

The State contends that the New Hampshire insanity defense is not a lawless, standardless doctrine. It asserts that the jury is given clear guidance with respect to its fact-finding responsibilities and that instructions given to the jury require

> the jury to find that the claimed mental disease exists as a matter of medical fact, and further that, as a matter of fact, the defendant suffers from it. The jury then must make the further factual determination that the act committed was the result of the defendant's mental affliction.

Respondent's Memorandum at 16.

While the standards provided by New Hampshire's relevant jury instructions do not include a fixed definition of sanity or insanity, which Abbott contends is necessary to comport with due process requirements, the court finds that the New Hampshire instructions do provide guidance for the jury. As noted earlier, the *Leland* court referred to a number of guideposts: that the law is explained to the jury in the instructions, not only with regard to any legal distinctions, but also as to the details regarding such things as the burden of proof and the effect of presumptions. *Leland, supra,* 343 U.S. at 800, 72 S.Ct. at 1008. The instructions received by the Abbott jury contained, *inter alia,* the controlling law, guidance about the placement and weight of the burden of proof, and information about the relevant presumption. Additionally, the jury was told what evidence they could consider and was given examples of some of the factors they could consider in reaching their decision.

The State argues that "[b]ecause the New Hampshire doctrine is not rigidly tied to any particular medical theory of insanity, it allows the law to reflect the progress of medical science.... As the knowledge of science expands, so does the defense of insanity in New Hampshire." Respondent's Motion to Dismiss at 21. In contrast to *M'Naghten,* where only evidence which goes to the single issue of right and wrong is admissible, in New Hampshire all relevant evidence is admissible. Additionally, the jury is not required to give greater weight to expert testimony than to lay testimony. Arguably, the New Hampshire rule offers more leeway for defendant and jury alike, thus affording a greater measure of due process than does a more restrictive rule such as *M'Naghten.*[5] The defendant has a greater opportunity to be heard and in broader terms than perhaps another defendant who might be more restricted by a narrower concept of insanity

---

5. One 1967 sociological study compared the reactions of one thousand jurors to alternative legal criteria for determining criminal responsibility, finding that jurors instructed with the *Durham* rule were more likely to acquit on grounds of insanity than were those instructed with the *M'Naughten* rule. Moreover, the "verdicts of jurors who received no instructions as to the criterion of responsibility they were to apply matched very closely those reported under *Durham.*" Rita J. Simon, *The Jury and The*

*Defense of Insanity* 8, at 216 (1967). Indeed, the Simon study concluded that "the criterion for criminal responsibility as defined under *Durham* is closer to the jury's natural sense of equity than is the *M'Naghten* rule." *Id.* Thus, while there may be much controversy regarding various insanity instructions, it appears that insanity rules without rigid definitions do not necessarily lead to the unconstitutional result Abbott suggests.

and less discretion afforded to the jury in making its determination.

Abbott further argues that the uninstructed, unguided, untrained jury is in no position to assure that his right to due process is protected. The court disagrees. A jury's ability to competently and intelligently grapple with its task has frequently been criticized. In responding to allegations that particular instructions may confuse a jury, the Supreme Court has stated,

> Juries have for centuries made the basic decisions between guilt and innocence and between criminal responsibility and legal insanity upon the basis of the facts, as revealed by the evidence, and the law, as explained by instructions detailing the legal distinctions, the placement and weight of the burden of proof, the effect of presumptions, the meaning of intent, etc. We think that to condemn the operation of this system here would be to condemn the system generally. We are not prepared to do so.

*Leland, supra,* 343 U.S. at 800, 72 S.Ct. at 1008.

In commenting on the role of the jury vis-a-vis the issue of insanity, New Hampshire's Justice Doe remarked long ago that

> [i]t is often difficult to ascertain whether an individual had a mental disease, and whether an act was the product of that disease; but these difficulties arise from the nature of the facts to be investigated, and not from the law; they are practical difficulties to be solved by the jury, and not legal difficulties for the court.

*State v. Pike,* 49 N.H. 399, 439 (1869).

Additionally, Abbott contends that in order for a defendant to be afforded adequate due process of law, the jury's results must be predictable and replicable. Otherwise, Abbott argues, "similarly charged and tried defendants will not be equal before the law." Petitioner's Memorandum at 17. Again, the court is unpersuaded. The very nature of mental illness and those practical difficulties referred to by Justice Doe suggest that a case-by-case approach is more equitable. Moreover, due process of law does not require perfect consistency and uniformity.

Some inconsistency of jury results can be expected for at least two reasons. First, the jury is empanelled to act as a decisionmaker in a single case, not as a more permanent body. As a necessary consequence of their case-by-case existence, juries may tend to reach disparate outcomes based on the same instructions. Second, the generality of the instructions may contribute to a certain lack of predictability. The law encompasses standards phrased at varying levels of generality. As with other adjudicators, the jury may be instructed to follow a rule of certain and specific content in order to yield uniformity at the expense of considerations of fairness in the particular case; or, as in this case, the standard can be more abstract and general to give the adjudicator flexibility in resolving the dispute at hand.

*Haslip, supra,* 111 S.Ct. at 1055 (Kennedy, J., concurring). Those features of the jury system noted by Justice Kennedy which "discourage uniform results" are just as applicable in the context of an insanity instruction. Thus, nonuniformity cannot be equated with constitutional infirmity. *Id.*

> "It is not surprising that such collective judgments often are difficult to explain. But the inherent lack of predictability of jury decisions does not justify their condemnation. On the contrary, it is the jury's function to make the difficult and uniquely human judgments that defy codification and that 'buil[d] discretion, equity, and flexibility into a legal system.'"

*Id.* (quoting *McCleskey v. Kemp,* 481 U.S. 279, 311, 107 S.Ct. 1756, 1777, 95 L.Ed.2d 262 (1987) (quoting H. Kalven & H. Zeisel, *The American Jury* 498 (1966)).

### c. Jury Discretion

Having acknowledged a fair amount of discretion on the part of a New Hampshire jury when considering an insanity defense, the question for this court remains whether that amount of discretion is within constitutional limits. To what extent is guidance from the court necessary as the jury sets

out on its mission, and what degree of jury discretion provides adequate due process of law?

In a recent case, the United States Supreme Court had occasion to consider the functioning of a jury and jury discretion within the context of the Fourteenth Amendment's Due Process Clause. In *Haslip, supra*, 111 S.Ct. 1032, an insurance company was found liable for the fraud of an agent, and the Court held, 7 to 1, that the jury's award of punitive damages, which amounted to more than four times the amount of compensatory damages claimed and more than 200 times the out-of-pocket expenses, did not violate the Due Process Clause. While *Haslip*, a civil case involving a jury award of punitive damages, is factually distinguishable from the instant case, the Court's Fourteenth Amendment review and analysis is analogous and instructive.

Like the insanity defense, punitive damages have long been a part of state law. In reviewing the extensive tradition and history of the common law method of assessing punitive damages, the Court in *Haslip* restated that "[i]f a thing has been practiced for two hundred years by common consent, it will need a strong case for the Fourteenth Amendment to affect it." *Haslip, supra*, 111 S.Ct. at 1043 (citations omitted). However, the Court went on to observe that "[n]either the antiquity of a practice nor the fact of steadfast legislative and judicial adherence to it through the centuries insulates it from constitutional attack...." *Id.* (quoting *Williams v. Illinois*, 399 U.S. 235, 239, 90 S.Ct. 2018, 2021, 26 L.Ed.2d 586 (1970)). In resolving the issue of the constitutional acceptability of the punitive damages award in *Haslip*, the Court focused on the issue of jury discretion.

We need not, and indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case. We can say, however, that general concerns of reasonableness and adequate guidance from the court when the case is tried to a jury properly enter into the constitutional calculus.

*Id.*

In reviewing the constitutionality of the jury's determination in *Haslip*, the Court focused on the issues of reasonableness and adequate guidance by the court as provided by the instructions to the jury, the available post-trial procedures, and the availability of state supreme court review. The Court concluded that the instructions at issue gave the jury significant but not unlimited discretion in the determination.[6] *Haslip, supra*, 111 S.Ct. at 1044. Additionally, the Court found that there were adequate post-trial court procedures for scrutinizing the jury's awards, and that a further check of the jury's or trial court's discretion was provided by state supreme court review. *Id.*

Guided by the teachings of *Leland* and *Haslip*, this court finds that while the jury discretion afforded by the New Hampshire insanity rule is broad, the instructions given are not unlimited and that the concerns of reasonableness and adequate guidance from the court have not been ignored. In the instant case, the jury was clearly reminded of the factual and legal predicates upon which it was to base its decision, it was instructed as to exactly what the components of the task were, and, in fact, it was guided in how to go about that task. *See* Trial Transcript, Vol. III, at 410–13. Additionally, at the trial level, procedural protections exist and were, in fact, utilized by petitioner Abbott in seeking review of the jury verdict. Abbott filed three post-trial motions that were heard by the trial court.[7] Prior to the trial court's denying

---

6. The instructions in *Haslip* were found to "enlighten[ ] the jury as to the punitive damages' nature and purpose, identified the damages a punishment for civil wrongdoing of the kind involved, and explained that their imposition was not compulsory. These instructions, we believe, reasonably accommodated [the plaintiff's] interest in rational decisionmaking and [the state's] interest in meaningful individualized assessment of appropriate deterrence and retribution." *Haslip, supra*, 111 S.Ct. at 1044.

7. The trial transcript reveals that "[t]wo of them are essentially motions to set aside, motions for a directed verdict. The third is a motion for a

all of those motions, Abbott had the opportunity to be heard regarding his objections to the exercise by the jury of its discretion in rendering its determination in his case. Subsequently, Abbott appealed the jury's verdict to the New Hampshire Supreme Court, which further reviewed the jury's decision.

#### d. Adequate Appellate Review

Abbott argues that New Hampshire's "standardless instruction prevents adequate appellate review of the jury's functioning and judgment on the issue of insanity for there is no standard against which their judgment and functioning can be measured." Petition for Writ of Habeas Corpus at 4.

As the State points out, however, jury verdicts are not, in fact, insulated from appellate review. While accorded deference in our system of justice, they are not permitted to stand if wholly unsupported by the evidence. Respondent's Motion to Dismiss at 15. "Elements of whim and caprice do not predominate when the jury reaches a consensus based upon arguments of counsel, the presentation of evidence, and instructions from the trial judge, subject to review by the trial and appellate courts." *Haslip, supra,* 111 S.Ct. at 1055 (Kennedy, J., concurring).

A criminal defendant is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts. *United States v. Powell,* 469 U.S. 57, 67, 105 S.Ct. 471, 477–78, 83 L.Ed.2d 461 (1984); *United States v. Bucuvalas,* 909 F.2d 593, 595 (1st Cir.1990) (citing *Powell*).

In Abbott's case, the standards used by the New Hampshire Supreme Court during its review of Abbott's verdict were (1) that it would "view the evidence and all reasonable inferences therefrom in the light most favorable to the State," *Abbott, supra,* 127 N.H. at 447, 503 A.2d at 794 (citation omitted), and (2) that a jury verdict will be overturned on appeal if "no rational trier of fact could have come to the same conclu-

sion." *Id.* (citations omitted). "The jury may not enter a verdict wholly unsupported by the evidence." *Id.,* 127 N.H. at 449, 503 A.2d at 795. Applying these standards, the New Hampshire Supreme Court found that "[t]he jury could reasonably have found, even if it believed that the defendant was suffering from a mental illness, that the killing of David Staples was not a product of that mental illness and that the defendant therefore was criminally responsible for the murder." *Id.,* 127 N.H. at 448, 503 A.2d at 794 (citations omitted).

#### Conclusion

For the reasons stated herein, the court finds that the insanity defense as used in New Hampshire with its attendant jury instructions, although an ancient practice, comports with contemporary notions of fundamental fairness and has not deprived petitioner Abbott of due process of law under the Fourteenth Amendment. Accordingly, the court finds that Abbott has failed to state a claim upon which relief can be granted, and his habeas corpus petition must be and is herewith dismissed.

SO ORDERED.

new trial based on new evidence." Trial Transcript, Motions and Sentencing Volume, at 3.