Rockingham
Nos. 89-485
 90-341

THE STATE OF NEW HAMPSHIRE

v.

SUSAN MCLAUGHLIN COOK

June 25, 1992

*John P. Arnold*, attorney general (*David S. Peck*, senior assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

JOHNSON, J. Following a jury trial, the defendant, Susan McLaughlin Cook, was convicted of conspiring with her ex-husband,

Robert McLaughlin, Sr. ("Robert Sr."), to commit murder, of being an accomplice to murder, and of witness tampering. On appeal, the defendant argues that the Trial Court (*Temple*, J.) erred in making the following rulings: (1) that admission of out-of-court confessions made by Robert Sr., which inculpated her, did not violate New Hampshire Rule of Evidence 804(b)(3) or the defendant's confrontation rights under part I, article 15 of the State Constitution and the sixth amendment to the Federal Constitution; (2) that Robert Sr.'s psychiatric records were not discoverable for the purpose of determining the admissibility of his confessions; and (3) that a new trial was not required based on newly discovered, exculpatory evidence. For the reasons that follow, we affirm.

Robert Cushing was shot to death at his Hampton home on the night of June 1, 1988. In mid-July 1988, Robert McLaughlin, Jr. ("Robert Jr."), Robert Sr.'s twenty-five-year-old son, visited his father at his apartment. Robert Jr. had not seen his father for several months and was attempting to mend a troubled relationship. The two engaged in casual conversation until Robert Sr., according to Robert Jr.'s testimony, made the following confession implicating the defendant as an accomplice to Cushing's murder:

"[Robert Sr.] was going to shoot [Cushing] and he didn't care what happened to him, if he got caught for it or if he got killed. . . . And he went to [the defendant] and he told her about it, and she told him that he couldn't do it like that, that he had to come up with a better idea, that he had to come up with a better plan. So she told him that they had to disguise themselves. And she got him to put on a disguise, and herself. And then . . . he went and got a shotgun; and [the defendant] . . . walked out and got into the car . . . on the driver's side. He got in on the passenger side. And [the defendant] drove to this place where this man lived and parked the car, and my father got out and went out into the yard. And then she drove down the road a ways and parked the car, and that she ran back to where he was there in the yard and she went to the side of the house and stood guard for him while he went up to the front door and shot Robert Cushing. . . . [He] and [the defendant] ran back to where she had parked the car. . . . She got in on the driver's side, again . . . and he got in on the passenger side . . . and they went to some place and got rid of the shotgun."

Shortly thereafter, the defendant, who was not present when Robert Sr. made the above confession to his son, entered the room.

Robert Sr. informed the defendant that he had "told [Robert Jr.] everything" and reassured her that Robert Jr. could be trusted to keep the incident secret. The defendant, in response, articulated a similar version of the events which Robert Jr. testified to as follows:

"[M]y father came to her and told her that he was going to go out and kill Robert Cushing. And she told me that . . . she thought . . . that he'd have to have a better idea than that; . . . that he had to come up with a plan. . . . [S]he told him, that they'd have to disguise themselves, and she . . . told my father to dress in all black, to put on a black shirt, black pair of pants, a black hat. . . . [S]he had put on a pair of loose pants, a loose shirt and a pair of jogging sneakers, and she put her hair up. . . . [M]y father had gone and gotten his gun, and she had gone and gotten her karate staff . . . and she had gone out to the car and my father followed her out, and . . . she drove them to this place and parked the car and my father got out. And she said that she drove down the road and parked the car and ran back to where my father was. She said she got back to where he was and that she walked to the corner of the house; . . . she stood there . . . watching both ways while he walked up to the front door with the shotgun and shot Robert Cushing. She said after that they ran back to the car . . . and that they rode around and that they got rid of the gun."

On August 26, 1988, Robert Sr. made a second confession inculpating the defendant. Victor DeMarco, a Hampton police officer and close friend, testified that the defendant called him and told him that Robert Sr. was "in real bad shape" and had "been drinking a real lot." DeMarco immediately drove to the McLaughlin apartment, where he found Robert Sr. in an "intoxicated" and "ragged" state. Shortly thereafter, according to DeMarco's testimony, Robert Sr. told DeMarco that he "whacked" Cushing. The defendant, who was not present, then entered the room, and Robert Sr. requested that she tell DeMarco about the Cushing murder. After expressing dismay that Robert Sr. had broken his promise not to tell anybody about the murder, the defendant told DeMarco that she had tried to stop Robert Sr. from committing the crime.

DeMarco then drove Robert Sr. to the Pease Air Force Base Hospital, leaving the defendant at the apartment. On the way to the hospital, Robert Sr. again confessed that he killed Cushing. When DeMarco responded that the police department's description of the

murder suspect did not match Robert Sr.'s physical characteristics, Robert Sr. explained, "That must have been Sam [the defendant] they saw."

One week into the trial, when the State sought to introduce the testimony of Robert Jr. and DeMarco regarding the confessions, a lengthy hearing was held to determine whether Robert Sr.'s confessions to Robert Jr. and DeMarco, inculpating the defendant, were admissible under the confrontation provisions of the State and Federal Constitutions. At the conclusion of this hearing, the trial court ruled that Robert Sr.'s confessions to both Robert Jr. and DeMarco were sufficiently reliable to be admitted under the State and Federal Constitutions. The trial court also denied the defendant's motion to compel production of Robert Sr.'s psychiatric records, which the defendant asserted were necessary to determine the reliability of his inculpatory statements.

Several months after the defendant was convicted, but before Robert Sr.'s own trial, in which he admitted shooting Cushing and pled insanity, Robert Sr. wrote the defendant's attorney two letters which completely exculpated the defendant. The defendant moved for a new trial based on these letters. A hearing was held, and the motion was denied. The trial court reasoned, in part, that "in light of the evidence presented at trial . . . the contents of the letters are not of such character that a different result would probably be reached upon another trial of these charges if these letters were admitted for the jury's consideration."

■ We first address the defendant's claim that Robert Sr.'s confessions constituted inadmissible hearsay evidence and did not fall within the statement against interest exception to the hearsay rule, N.H. R. Ev. 804(b)(3). The defendant argues that the exception does not extend to statements by a co-defendant that *inculpate* the defendant. This same claim was recently rejected in *State v. Kiewert*, 135 N.H. 338, 605 A.2d 1031 (1992). In *Kiewert*, we held that Rule 804(b)(3) "permits the introduction into evidence of collateral statements contained within a declaration against penal interest inculpating the accused, which afford a reasonable assurance of trustworthiness." *Id.* at 345, 605 A.2d at 1035–36.

■ We recognize, however, "that evidence admitted under a state-created exception to the hearsay rule may nevertheless infringe constitutional rights." *State v. Larochelle*, 112 N.H. 392, 397, 297 A.2d 223, 226 (1972). As then-Justice Grimes stated:

> "The right to confrontation is one of the basic safeguards of liberty. If it had not been intended that it should provide greater protection than that given by the hearsay rule as a mere rule of evidence subject to change or even elimination, there would have been no need to enshrine it in the Bills of Rights of both Constitutions."

*Id.* at 399, 297 A.2d at 232 (Grimes, J., dissenting). Thus, we must address the defendant's claim that Robert Sr.'s confessions, although properly admitted under Rule 804(b)(3), violated her confrontation rights pursuant to part I, article 15 of the New Hampshire Constitution and the sixth amendment to the Federal Constitution. *See United States v. Harty*, 930 F.2d 1257, 1263 (7th Cir.) (court determines admissibility under Rule 804(b)(3) and "retain[s] a separate Confrontation Clause analysis"), *cert. denied*, — U.S. —, 112 S. Ct. 262 (1991). Because the Federal Constitution does not provide the defendant with greater protection in this area than she is entitled to under part I, article 15, we decide this case exclusively under the State Constitution. *See State v. Ball*, 124 N.H. 226, 232, 471 A.2d 347, 351 (1983).

In *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), the United States Supreme Court found that hearsay statements made in the context of prior judicial proceedings in which there had been an opportunity for cross-examination do not infringe a defendant's confrontation rights if: (1) the prosecution "produce[s], or demonstrates the unavailability of, the declarant whose statement it wishes to use against the defendant," *id.* at 65; and (2) the statement "bears adequate 'indicia of reliability,'" *id.* at 66. The general applicability of the analytical framework set out in *Roberts*, however, has been called into question. In *United States v. Inadi*, 475 U.S. 387 (1986), for example, the Supreme Court wrote:

> "*Roberts* itself disclaimed any intention of proposing a general answer to the many difficult questions arising out of the relationship between the Confrontation Clause and hearsay. The Court has not sought to map out a theory of the Confrontation Clause that would determine the validity of all . . . hearsay exceptions."

*Id.* at 392 (citations and quotations omitted). Most recently, in *White v. Illinois*, — U.S. —, 112 S. Ct. 736 (1992), the Court limited the applicability of *Roberts'* unavailability requirement to circumstances where "the challenged out-of-court statements were made in the course of a prior judicial proceeding." *Id.* at —, 112 S. Ct. at 741.

■ We have considered the various rationales discussed in the Supreme Court's decisions from *Roberts* to *White, see State v. Gravel,* 135 N.H. 172, 176, 601 A.2d 678, 680 (1991), and conclude that under part I, article 15, Robert Sr.'s confessions that inculpate the defendant must possess "particularized guarantees of trustworthiness." *Roberts,* 448 U.S. at 66. By requiring that hearsay implicating a person other than the declarant, which may otherwise be admissible against the declarant under an exception to the hearsay rule, possess "particularized guarantees of trustworthiness" before they are admissible as evidence against the other person, we insure that the confrontation clause will never become, as Chief Justice Grimes feared, "a mere rule of evidence subject to change or even elimination . . . ." *Larochelle,* 112 N.H. at 399, 297 A.2d at 232 (Grimes, J., dissenting). This requires the State to present the trial court with evidence that the confessions were "so trustworthy that adversarial testing would add little to [their] reliability." *Idaho v. Wright,* 497 U.S. 805, —, 110 S. Ct. 3139, 3149 (1990).

As for unavailability, the parties agree that Robert Sr., by exercising his constitutional right against self-incrimination, was unavailable to testify at her trial. Thus, because unavailability is not at issue in this case, we refrain from articulating the circumstances in which unavailability is a prerequisite to admission of hearsay evidence under part I, article 15 of the State Constitution.

■ As noted earlier, the trial court found that Robert Sr.'s confessions to Robert Jr. and DeMarco were sufficiently reliable to be admitted into evidence. The court explicitly mentioned the following four reasons for finding that the statements were sufficiently reliable: (1) the statements "were not made in the interest of the declarant"; (2) Robert Sr. "had no reason to misrepresent his involvement or that of the defendant [or] to implicate the defendant"; (3) the statements "were made to persons shown to be trusted by the declarant"; and (4) "the defendant on each occasion adopted the confession of the declarant." We will not disturb the trial court's finding that the above factors established adequate indicia of reliability unless we conclude that such a finding was clearly erroneous. *See State v. Richards,* 129 N.H. 669, 674, 531 A.2d 338, 341–42 (1987); *State v. Mallar,* 127 N.H. 816, 818, 508 A.2d 1070, 1071 (1986).

■ Before determining whether the trial court clearly erred in finding reliability based on the above factors, we note that the first factor (the fact that Robert Sr. made the confessions against his own penal interest) cannot, standing alone, satisfy the reliability require-

ment. As the trial court correctly noted, this factor, while important to the confrontation analysis, simply restates the necessary requirement for Robert Sr.'s confession to fall into the declaration against interest exception to the hearsay rule.

■ Additionally, we find that the trial court's fourth factor (the fact that "the defendant on each occasion adopted the confession of the declarant") should not have been considered. First, neither of Robert Sr.'s confessions was made in the defendant's presence. Thus, any subsequent ratification of the confessions by the defendant did not constitute adoptive admissions under New Hampshire Rule of Evidence 801(d)(2). *See State v. Jansen*, 120 N.H. 616, 618, 419 A.2d 1108, 1109 (1980). Secondly, because the defendant's non-contemporaneous ratification of Robert Sr.'s confessions did not surround the making of the statement, it should not have been considered in determining reliability under our State Constitution. *See Wright*, 497 U.S. at —, 110 S. Ct. at 3148–49; *see also People v. Watkins*, 438 Mich. 627, 665, 475 N.W.2d 727, 746 (1991).

■■ With the above considerations in mind, we turn to the trial court's finding regarding the reliability of Robert Sr.'s confession to Robert Jr. Our review of the testimony presented at the hearing reveals that the trial court did not err in admitting this confession into evidence. Even after the defendant's subsequent ratification of Robert Sr.'s confession to Robert Jr. is eliminated from the analysis, the trial court could still have reasonably found that Robert Sr. was sober, mentally stable, and otherwise reliable at the time he made the confession and implicated the defendant. The only problematic aspect of Robert Jr.'s testimony regarding Robert Sr.'s confession concerned the reliability and mental stability of Robert Jr. As the trial court correctly noted, however, "to require a preliminary assessment of the [in-court declarant's] credibility would [usurp the jury's function]." *See United States v. Seeley*, 892 F.2d 1, 2–3 (1st Cir. 1989). Defense counsel was in possession of Robert Jr.'s medical records and extensively used such records to impeach Robert Jr.'s credibility at trial.

■ We next turn to the trial court's admission of Robert Sr.'s statement to DeMarco inculpating the defendant. As noted earlier, Robert Sr. told DeMarco on the way to the Pease Air Force Base Hospital that "[t]hat must have been Sam [the defendant] they [the witnesses] saw" on the night of the Cushing murder. We hold that it was not clearly erroneous for the trial court to find that this state-

ment was reliable and, hence, met the "particularized guarantees of trustworthiness" test.

First, as the trial court noted, Robert Sr. trusted DeMarco as a close friend. DeMarco testified that he had known Robert Sr. for eighteen years. As partners in the Hampton Police Department, the two "rode together" for a number of years. The reliability of Robert Sr.'s statement was greatly enhanced by the fact that he would have trusted DeMarco to keep the inculpatory statements to himself. After all, when inculpatory, out-of-court statements are suspect, the primary reason is that a guilty declarant is likely in the circumstances to blame another for his own illegal conduct. *See Lee v. Illinois*, 476 U.S. 530, 541 (1986). Since Robert Sr. trusted DeMarco to keep all inculpatory information secret, the benefits to be derived from blaming the defendant were seriously diminished.

■■■ Secondly, Robert Sr.'s inculpatory statement to DeMarco, although not rising to the level of an excited utterance, was spontaneously volunteered in response to a question that was neither leading nor suggestive. *See State v. Hutcheson*, 62 Wash. App. 282, 294, 813 P.2d 1283, 1290 (1991), *review denied*, 118 Wash. 2d 1020, 827 P.2d 1012 (1992). A statement's spontaneity is an important factor in determining reliability under the confrontation clause. *See Dutton v. Evans*, 400 U.S. 74, 89 (1970); *see also United States v. Holland*, 880 F.2d 1091, 1094 (9th Cir. 1991); *cf. Chambers v. Mississippi*, 410 U.S. 303, 300–01 (1973) (spontaneity relevant to "trustworthiness" under the declaration against interest exception to the hearsay rule); *Richards*, 129 N.H. at 675, 531 A.2d at 342 (same). A declarant's spontaneous statements are likely to be reliable because his "reflective faculties may be stilled and the utterance may become the instinctive and uninhibited expression of the speaker's actual impressions and belief." *People v. Farmer*, 47 Cal. 3d 888, 903, 765 P.2d 940, 949–50, 254 Cal. Rptr. 508, 517–18 (1989). In short, a declarant such as Robert Sr., who emotionally blurts out a statement in response to a non-suggestive comment, presumably does not have sufficient time to contrive a false version of events.

■■■ The defendant, in her brief, makes much of the fact that Robert Sr. was intoxicated at the time he made his statement to DeMarco. We find, however, that intoxication does not deal a fatal blow to the trial court's finding of reliability in this case. First, the deliberative mental faculties which intoxication most seriously hampers were not relied upon by Robert Sr. in making his spontaneous statement. Second, DeMarco made no attempt to take advantage of Ro-

bert Sr.'s intoxicated state or coerce a confession. *Cf. State v. Chapman*, 135 N.H. 390, 401, 605 A.2d 1055, 1062 (1992) (intoxicated defendant's confession to the police while in custody was voluntary due to non-coercive and non-deceptive atmosphere surrounding the confession).

The defendant next claims that the trial court erred in denying her access to Robert Sr.'s psychiatric files for the purpose of establishing the unreliability of his confession. The defendant argues that she was forced "to challenge Robert Sr.'s reliability without any access to crucial evidence concerning his reliability." The State counters that the records were protected by the psychiatrist-patient privilege, N.H. R. Ev. 503, and that the records were not necessary to determine reliability. The defendant does not contest the applicability of the psychiatrist-patient privilege.

■ We held in *State v. Farrow*, 116 N.H. 731, 366 A.2d 1177 (1976), that a patient's privilege is not absolute. A defendant is entitled to otherwise privileged materials which are "essential and reasonably necessary to permit counsel adequately to cross-examine for the purpose of showing unreliability or bias." *Id.* at 733, 366 A.2d at 1179. The defendant contends that Robert Sr.'s psychiatric records were discoverable under the *Farrow* standard. On appeal, the defendant must establish that the trial court abused its discretion, *State v. Lewis*, 129 N.H. 787, 799, 533 A.2d 358, 366 (1987), in refusing to give her access to the psychiatric records.

■ In determining whether or not the trial court abused its discretion, we consider that it heard ample testimony regarding Robert Sr.'s psychological and substance abuse problems. At the hearing, DeMarco testified concerning Robert Sr.'s personal history, including his abuse of alcohol and marijuana, his difficulties with work-related stress, his past threats to kill himself and his first wife, and his receipt of psychiatric care for a "coping problem" from time to time over a period of years. We conclude that given the generality of the defendant's factual basis for requesting Robert Sr.'s psychiatric records and the evidence available in the record concerning his psychiatric history, the trial court did not abuse its discretion in finding that the records were not discoverable.

We now turn to the final issue raised by the defendant: whether the exculpatory letters that Robert Sr. sent to the defendant after she was convicted formed a sufficient basis for a new trial. We affirm the trial court's denial of a new trial.

 To obtain a new trial on the basis of newly discovered evidence, the defendant must establish the following in the trial court:

> "(1) that [she] was not at fault for not discovering the evidence at the former trial; (2) that the evidence is admissible . . . , material to the merits, and not cumulative; and (3) that [the evidence is] of such a character that a different result will probably be reached upon another trial."

*State v. Abbott*, 127 N.H. 444, 450, 503 A.2d 791, 795 (1985) (citations and quotations omitted). "The question of whether a new trial should be granted on the basis of newly discovered evidence is a question of fact for the trial court." *Id.* "We will sustain the trial court's decision unless it can be said to conclusively appear that a different result is probable, so that the Trial Court's conclusion is clearly unreasonable." *Id.* (quotation omitted). Upon reviewing the record, we are unable to conclude that the trial court's finding that admission of the letters would not have affected the trial's outcome was "clearly unreasonable." The record indicates that this finding was based on the trial court's thoughtful analysis of the record and its first-hand observations of the evidence presented to the jury.

*Affirmed.*

THAYER, J., with whom HORTON, J., joined, concurred specially; the others concurred.

THAYER, J., concurring specially: This is the second time we have had occasion to address the admissibility of statements against interest. The evidentiary rule, in pertinent part, creates the following hearsay exception:

> "A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in this position would *not* have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

N.H. R. Ev. 804(b)(3).

In *State v. Kiewert*, 135 N.H. 338, 605 A.2d 1031 (1992), a majority of this court held that under our Rules of Evidence statements against penal interest which also inculpate another may be admitted at trial as an exception to the hearsay rule if the statement possesses the required indicia of reliability and is thus trustworthy. Trustworthiness of the statement, we said, is determined by evaluating the circumstances in which the declarant made the statement and the declarant's incentive to speak truthfully. *Id.* at 346, 605 A.2d at 1036. "Of course, the traditional surety of reliability of the out of court declarant is the statement's contravention of the declarant's penal interest." *Id.* at 346, 605 A.2d at 1036 (citations and quotations omitted). Justice Johnson concurred and wrote separately, however, "to stress that there must be corroborating evidence concerning the reliability of the declarant's out-of-court statement in order to *inculpate* an accused . . . just as the Rule requires such evidence to *exculpate* the accused." *Id.* at 350–51, 605 A.2d at 1039 (Johnson, J., concurring). Thus, it would appear that admissibility, in Justice Johnson's view, includes consideration of facts corroborating the statement to determine the statement's reliability. Chief Justice Brock in his dissent, which Justice Batchelder joined, stated that only the circumstances surrounding the making of the statement must be considered and he would not consider the corroborating facts. The dissent, in my view, unnecessarily limited the facts which must be considered under the test.

In this case, we are asked to review New Hampshire Rule of Evidence 804(b)(3) in light of the confrontation clause of the United States and New Hampshire Constitutions. In considering whether a statement within an exception to the hearsay rule is admissible, the United States Supreme Court stated that admissibility depends upon whether the statement is reliable, that is, trustworthy. *Ohio v. Roberts*, 448 U.S. 56, 66 (1980). In *Roberts*, the court held that the reliability requirement can be met in two circumstances; either the hearsay statement "falls within a firmly rooted hearsay exception," or it is supported by "a showing of particularized guarantees of trustworthiness." *Id.* at 66; *see Idaho v. Wright*, 497 U.S. 805, —, 110 S. Ct. 3139, 3146 (1990). A firmly rooted exception to the hearsay rule, when properly applied, satisfies the constitutional requirement of reliability because of the weight accorded longstanding judicial and legislative experience in assessing the trustworthiness of out-of-court statements. *Id.* at —, 110 S. Ct. at 3147.

The residual hearsay exception, by contrast, accommodates *ad hoc* instances in which statements not otherwise falling within a recog-

nized hearsay exception might nevertheless be sufficiently reliable, and therefore admissible at trial. The residual hearsay exception, however, does not share the same tradition of reliability that supports a firmly rooted exception; therefore, it must possess a particularized guarantee of trustworthiness, which is determined by examining the totality of the circumstances surrounding the making of the statement that render the declarant worthy of belief. In determining whether an exception to the hearsay rule is firmly rooted, the Supreme Court in *White v. Illinois,* — U.S. —, 112 S. Ct. 736 (1992), held that an exception that was embodied in the Federal Rules of Evidence and widely accepted among the States qualified as such. *Id.* at — n.8, 112 S. Ct. at 742 n.8. New Hampshire Rule of Evidence 804(b)(3) meets that standard. Moreover, the first circuit has stated that the hearsay "exception for declarations against penal interest would seem to be 'firmly rooted' . . . ." *United States v. Seeley,* 892 F.2d 1, 2 (1st Cir. 1989); *see also United States v. York,* 933 F.2d 1343, 1363 (7th Cir. 1991) (exception for statement against penal interest firmly rooted, unless made in context of confession) *cert. denied,* 112 S. Ct. 321 (1991); *United States v. Katsougrakis,* 715 F.2d 769, 776 (2d Cir. 1983) (declaration against penal interest within firmly rooted hearsay exception) *cert. denied,* 464 U.S. 1040 (1984).

Writing for the majority, Justice Johnson specifically states that they have considered the federal cases, but nonetheless holds that evidence offered under New Hampshire Rule of Evidence 804(b)(3) to inculpate a third party accused must be supported by a showing of a particularized guarantee of trustworthiness in order to survive a confrontation clause challenge. This showing must be based on a review of only those limited facts that Chief Justice Brock wrote about in the *Kiewert* dissent. This analysis does not include the corroborating circumstances which Justice Johnson would require in his *Kiewert* concurrence. The majority in this case overrules *Kiewert* to the extent that corroborating evidence is considered when evaluating a confrontation clause challenge.

The majority does not acknowledge or discuss the fact that evidence which qualifies under a firmly rooted exception to the hearsay rule has met the constitutional requirement of having an "indicia of reliability." The court without comment or reason simply disregards this theory of constitutional law and in a conclusory statement appears to render all hearsay exceptions subject to a particularized guarantee of trustworthiness standard. It is with this conclusion and lack of supporting reasoning that I must disagree.

HORTON, J., joins in the special concurrence.