Belknap
No. 97-588

THE STATE OF NEW HAMPSHIRE

v.

BOUNTHAM SONTHIKOUMMANE

October 31, 2000

*Philip T. McLaughlin*, attorney general (*N. William Delker*, assistant attorney general, on the brief and orally), for the State.

*Risa Evans*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

PER CURIAM. The defendant, Bountham Sonthikoummane, appeals his convictions, after a jury trial in Superior Court (*Perkins*, J.), on three indictments for conspiring to sell a controlled drug. *See* RSA 318-B:2 (1995). The defendant contends the trial court erred in admitting and excluding certain evidence at trial. We affirm.

Based on the evidence adduced at trial, the jury could have found the following facts. In July 1996, Corporal Nightingale, an undercover narcotics detective for the State Police, led an investigation in Laconia. In the course of that investigation, Nightingale made arrangements with Bounleuth Sinbandith for several purchases of crack cocaine. *See generally State v. Sinbandith*, 143 N.H. 579, 729 A.2d 994 (1999). On four occasions, Nightingale gave Sinbandith a sum of money for the purchase of crack cocaine. Nightingale recorded the serial numbers of the money given to Sinbandith. On each occasion, Sinbandith drove to the same location and walked alone to the defendant's residence. On all but one of these trips, either Elizabeth Begin, Sinbandith's girlfriend, or Velvet Weeks, another associate of Sinbandith, accompanied him. Upon Sinbandith's return, Weeks would hand Nightingale or another

undercover officer a quantity of crack cocaine. When Weeks did not accompany Sinbandith, she met with him upon his return before handing over the crack cocaine. On one occasion Sinbandith was unable to acquire the cocaine and returned the money to Nightingale. Sinbandith, Begin, and Weeks referred to a person named "Ott" as controlling the timing of the sales, and supplying them with the crack cocaine. The last two purchases by the undercover officers were for a total of $600 worth of crack cocaine.

Following the last purchase of crack cocaine, the undercover officers executed a search warrant for the defendant's residence and arrest warrants for Sinbandith, Begin, and Weeks. At the time of his arrest, Sinbandith identified the defendant as "Ott." During the search of the defendant's residence, the officers discovered: (1) $2,800 hidden in a stereo speaker; (2) $540 in the possession of the defendant and his wife; (3) three late model motor vehicles; (4) airline tickets valued in excess of $3,500; (5) jewelry; (6) a large screen television; (7) a stereo system; (8) a cellular telephone; (9) a pager; (10) a photocopier; (11) a loaded handgun; (12) a large suitcase filled with new clothing; and (13) a key to a safety deposit box. Mixed in with the $2,800 found in the stereo speaker was $580 of the money used by the undercover officers in their last two purchases of cocaine from Sinbandith. A subsequent search of the safety deposit box revealed $4,000 in cash and additional jewelry. The total value of jewelry found in the two searches was approximately $20,000. This evidence, along with evidence of the defendant's history of unemployment, relatively low family income, and possession of food stamps was presented to the jury during trial.

In addition to offering evidence of the defendant's "unexplained wealth" at trial, the State offered a portion of a written confession made by Sinbandith that implicated the defendant in the cocaine sales. During trial, the defendant indicated that he wanted to call his wife as a witness and the State objected. The trial court sustained the objection and refused to allow the defendant's wife to testify.

On appeal, the defendant argues that the trial court erred in: (1) allowing a portion of Sinbandith's confession into evidence; (2) allowing the State to submit evidence of the defendant's "unexplained wealth"; and (3) excluding the testimony of his wife. We will not reverse a trial court's ruling on the admissibility of evidence absent an abuse of discretion. *See State v. Warren*, 143 N.H. 633, 636, 732 A.2d 1017, 1019 (1999). "To show an abuse of discretion, the defendant must demonstrate that the court's ruling was clearly

untenable or unreasonable to the prejudice of his case." *Id.* We address each argument in turn.

## I. *Sinbandith's Confession*

The defendant first challenges the admission at trial of a portion of Sinbandith's confession. On the same day the police searched the defendant's residence, they arrested Sinbandith. While in custody, Sinbandith waived his *Miranda* rights, *see Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966), and spoke with the police about his role in the crack cocaine sales. Three hours and ten minutes after he was arrested, he signed a written confession.

At trial, the State called Sinbandith to testify about his role in the crack cocaine sales, and he invoked his Fifth Amendment right not to testify. Over the defendant's objection, the trial court allowed a portion of Sinbandith's written confession to be read to the jury as a statement against interest under New Hampshire Rule of Evidence 804(b)(3).

The defendant argues that the trial court erred because the statement: (1) was not a statement against interest; (2) was non-self-inculpatory; and (3) was not reliable. As the defendant raises no constitutional arguments, we decide these issues solely on the basis of New Hampshire Rule of Evidence 804(b)(3). *Cf. State v. Cook*, 135 N.H. 655, 660, 610 A.2d 800, 803 (1992) (recognizing "that evidence admitted under a state-created exception to the hearsay rule may nevertheless infringe constitutional rights").

Rule 804(b)(3) provides:

(b) *Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . . .

(3) *Statement against interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in this position would *not* have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Sinbandith stated the following in his confession:

I bought from Ott a year or longer for smoke. I bought cocaine off of Ott. I went to Ott and got for other people to. I do understand that I sold to cop but it wasn't my stuff. It was Otts stuff. He gives its to Pheng and Pheng gives it to other people for Ott. He has been over to Ott's about 10 times or more. He went to get stuff down there. The last time was at Seng's house and he found Seng's stuff. He and Velvet went to my house, split it up and smoked it. On 7/25/96 I went to see Ott to get 300 dollars worth of crack for the two men whom I now know are police officers. Elizabeth called Ott and I went over to his house. On the 22nd of July I called me and Pheng talked on the phone and Pheng went down to Ott's. On the 25th of July I called Ott and Pheng went down to Ott's and got stuff send to the two guys.

The following portion of Sinbandith's confession was read to the jury: "On 7/25/96 I went to see Ott to get $300 worth of crack for the two men who I now know are police officers. Elizabeth called Ott, and I went over to his house."

■ An out-of-court statement made by a co-defendant is admissible against the accused when: "(1) the declarant is shown to be unavailable; and (2) the statement is against the declarant's penal interest." *State v. Kiewert*, 135 N.H. 338, 343, 605 A.2d 1031, 1034 (1992). Furthermore, if the statement is collateral to a clearly self-inculpatory statement, corroborating circumstances must clearly indicate the trustworthiness of the statement. *Id.* at 346, 605 A.2d at 1036. Corroboration may be determined from the facts surrounding the making of the statement and other evidence presented at trial. *Id. But see Cook*, 135 N.H. at 663, 610 A.2d at 805 (corroboration of trustworthiness under State Constitution Confrontation Clause challenge limited to circumstances surrounding the making of the statement).

The defendant urges us to adopt the reasoning in *Williamson v. United States*, 512 U.S. 594 (1994), for determining whether a co-defendant's statement is admissible under New Hampshire Rule of Evidence 804(b)(3). Although the terminology in the federal and State rules is nearly identical, we decline to do so having already decided this issue under State law. *See Kiewert*, 135 N.H. at 346, 605 A.2d at 1034-35. In *Williamson*, a divided court decided that under Federal Rule of Evidence 804(b)(3) only that portion of a co-

defendant's statement that clearly inculpated the co-defendant was admissible evidence against the accused. *Williamson*, 512 U.S. at 600. The court also noted that "Congress certainly could, subject to the constraints of the Confrontation Clause, make statements admissible based on their proximity to self-inculpatory statements." *Id.* Thus, the *Williamson* decision does not mandate a change in our existing interpretation of the admissibility of a co-defendant's statements under New Hampshire Rule of Evidence 804(b)(3).

The defendant does not contend that the trial court erred in finding that Sinbandith was unavailable under Rule 804(b)(3). Therefore, we do not address this first requirement.

 In arguing that the trial court erred in admitting Sinbandith's statement, the defendant first contends that it was not a statement against interest under the second prong of Rule 804(b)(3) because "Sin[]bandith's entire 'confession' had the purpose and effect of exculpating Sin[]bandith by shifting blame to [the defendant] to the extent possible under the circumstances." We disagree. While it is true that a co-defendant's confession implicating the accused is presumed to be untrustworthy, *cf. Cook*, 135 N.H. at 664, 610 A.2d at 806 (recognizing that a guilty declarant is likely to blame another); *Lee v. Illinois*, 476 U.S. 530, 541 (1985) (co-defendant has strong motivation to exonerate himself), individual portions of such a confession that clearly inculpate the declarant are more reliable, *see Williamson*, 512 U.S. at 600, and meet the requirements of our hearsay exception, *see Kiewert*, 135 N.H. at 343, 605 A.2d at 1034. The defendant concedes that "the statement that Sin[]bandith obtained crack on July 25 was clearly inculpatory." Additionally, other portions of the confession inculpated Sinbandith for acts of selling cocaine, as well as participating in a conspiracy to sell cocaine. A reasonable person under arrest and speaking with the police would understand that such a confession would subject him to criminal liability. *See id.* at 344, 605 A.2d at 1035. Therefore, the confession is against the declarant's penal interest and meets the second requirement of Rule 804(b)(3). *See id.*

The defendant next contends that the trial court erred in allowing the two sentence statement to be read to the jury because it contained information collateral to any inculpatory portions of the statement. The defendant essentially argues that a portion of the first sentence, "went to see Ott," and the second sentence, "Elizabeth called Ott, and I went over to his house," were non-self-inculpatory and an attempt by Sinbandith to shift blame for his crimes to the defendant.

■ Statements in a confession that may tend to exculpate the declarant are admissible under Rule 804(b)(3) if their trustworthiness is supported by corroborating evidence. *Id.* at 345-346, 605 A.2d at 1036. We examine "the record to determine whether there are corroborating circumstances which clearly indicate the trustworthiness of [a co-defendant's] statement." *Id.* at 351, 605 A.2d at 1039 (Johnson, J., concurring).

■ In choosing to admit part of the statement, the trial court failed to identify any corroborating evidence of trustworthiness other than finding that Sinbandith sufficiently understood English at the time he made his statement. A review of the transcript prior to the trial court's decision on admissibility reveals that the following corroborative evidence of trustworthiness was before the trial court: (1) Sinbandith accepted money for the purchase of cocaine on four occasions including $300 on July 25, 1996; (2) on each occasion Sinbandith drove to the same location and walked to the defendant's house; (3) $280 of the $300 used to purchase cocaine on July 25, 1996, was found in the defendant's stereo speaker; (4) Begin telephoned the source of the crack cocaine, and during one such call used the name "Ott"; (5) on July 22, 1996, Weeks told the undercover officers that "Ott" was supplying them with the crack cocaine; (6) when the undercover officers arrived early on July 25, 1996, to make a pre-arranged purchase of cocaine, Begin told them "Ott said 4:30[,] [n]ot until 4:30," and Sinbandith told them Ott had gone to Shop 'n Save and to come back in an hour; (7) while waiting for Sinbandith and Weeks to get the cocaine on July 25, 1996, Begin told the undercover officers that "Ott" was their source of cocaine and that only she and Sinbandith "were allowed over to Ott's"; and (8) during trial, both Weeks and Begin testified that Sinbandith would get the cocaine from the defendant. This evidence, when viewed in its entirety, clearly supports the truthfulness of the statement that on July 25, 1996, Begin telephoned the defendant and Sinbandith went to the defendant's house as part of an agreement to sell crack cocaine. Therefore, the trial court did not abuse its discretion in allowing this statement to be read to the jury.

As his final argument that the trial court erred in admitting Sinbandith's statement at trial, the defendant contends that the statement was inherently unreliable. The defendant asserts: "In his 'confession,' Sin[]bandith merely admitted to what he could not dispute. The one thing Sin[]bandith could do to help himself at that point was to minimize his own involvement." As stated above, however, there is ample corroborating evidence to support the

trustworthiness of the portion of the confession admitted by the trial court under Rule 804(b)(3).

■ Furthermore, even if we were to determine that the trial court abused its discretion in admitting the partial confession, such admission was harmless error. The two sentences read to the jury essentially repeated the extensive testimony elicited from the undercover officers, surveillance officers, Begin, and Weeks. Accordingly, it was cumulative and we have no reasonable doubt that any prejudice occurred from the statement if it was admitted improperly. *See State v. Steed,* 140 N.H. 153, 156, 665 A.2d 1072, 1075 (1995).

## II. Evidence of Unexplained Wealth

The defendant next argues that the trial court erred in admitting evidence of his "unexplained wealth." The defendant contends that such evidence was irrelevant and unfairly prejudicial. *See* N.H. R. EV. 401, 403.

■ To be relevant, evidence must tend "to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." N.H. R. EV. 401; *see State v. Ranger,* 142 N.H. 140, 142, 697 A.2d 505, 506 (1997). Generally, when a defendant is charged with a conspiracy that includes a profit motive, evidence of "unexplained wealth" is relevant to the existence of the conspiracy. *See People v. Connolly,* 171 N.E. 393, 397 (N.Y. 1930) (admission of unexplained wealth justified "by elementary principles governing the admissibility of evidence"); *Commonwealth v. Mulrey,* 49 N.E. 91, 94 (Mass. 1898) (wealth evidence admissible if it tends to show the existence of conspiracy); *United States v. Thompson,* 925 F.2d 234, 237 (8th Cir. 1991) (presence of cash, drugs, and firearms relevant to intent); *United States v. Grandison,* 783 F.2d 1152, 1156 (4th Cir. 1986) (wealth when unemployed relevant to intent); *United States v. Jackskion,* 102 F.2d 683, 684 (2d Cir. 1939) (untraced wealth relevant if it has a "logical tendency to prove criminal misconduct"); 1 C. TORCIA, WHARTON'S CRIMINAL EVIDENCE § 153, at 623 (14th ed. 1985) ("significant improvement in . . . financial condition is admissible"). This may be true even if there is another explanation for the extra money. *See United States v. Penny,* 60 F.3d 1257, 1263 (7th Cir. 1995). The mere fact that a defendant has unexplained wealth is not enough, however, for the evidence of wealth to be relevant. Such evidence must also have a nexus to the charges. *See State v. Besk,*

138 N.H. 412, 415, 640 A.2d 775, 777 (1994); *Mulrey*, 49 N.E. at 94; *Penny*, 60 F.3d at 1263.

■ In this case, the defendant was indicted and convicted of three conspiracies to sell drugs. At trial, the defendant denied involvement in any conspiracy, and the State offered evidence of the conspiracies that was independent of the unexplained wealth. This evidence included the fact that $580 of the money used by the undercover police officers was found mixed in with the $2,800 hidden in the defendant's stereo speaker. Additionally, the evidence of unexplained wealth in relation to the defendant's lack of employment over the prior year supported the factual assertion that the defendant was conspiring to sell cocaine for a profit. *See Penny*, 60 F.3d at 1263. Therefore, the evidence of unexplained wealth was linked with other evidence showing the existence of the charged conspiracies and tended to increase the probability that the conspiracies existed. Thus, the trial court did not err in concluding that the evidence was relevant.

The defendant next argues that the evidence of unexplained wealth was unfairly prejudicial. The defendant contends "that the evidence of 'unexplained wealth' may have led the jury to speculate that [the defendant] was a drug dealer and therefore must have committed the charged offenses." In support of his argument, the defendant points to the fact that no cocaine was ever found in his residence and no officer ever observed him with anything that could be construed as contraband.

Under Rule 403, evidence of the defendant's unexplained wealth was admissible if its probative value was not substantially outweighed by the danger of unfair prejudice to the defendant.

> Under [this] rule[], evidence is unfairly prejudicial if its primary purpose or effect is to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions of the case.

*State v. Marti*, 140 N.H. 692, 694, 672 A.2d 709, 711 (1996) (quotation and brackets omitted). "[T]he trial court is in the best position to gauge the prejudicial impact of particular testimony, and what steps, if any, are necessary to remedy that prejudice." *State v. Killam*, 133 N.H. 458, 463, 578 A.2d 850, 853 (1990). Thus, we give the trial court broad latitude when ruling on the admissibility of potentially unfairly prejudicial evidence. *See State v. Torrence*, 134 N.H. 24, 27, 587 A.2d 1227, 1229 (1991).

The indictments in this case alleged three discrete acts, yet the trial court allowed the State to introduce evidence of "unexplained wealth" far in excess of any profits that could have resulted from the three charges. By its nature, this evidence suggested that the defendant was involved in many more drug sales than the three charged by the State. "When, however, [evidence] is material to show the intent or the malice with which an act is done, other acts than those charged in the indictment are oftentimes competent evidence." *State v. Wentworth and Stone*, 37 N.H. 196, 209 (1858).

The existence of any conspiracy was contested by the defendant at trial. The trial court, therefore, would "have been justified in assigning the evidence a high probative value" for both the defendant's motive and his intent to enter into the charged conspiracies. *Steed*, 140 N.H. at 156, 665 A.2d at 1075. This is especially true when, as here, the circumstantial unexplained wealth evidence was a significant factor in corroborating the testimony of Begin and Weeks that the defendant was supplying the crack cocaine for them to sell on his behalf. *See United States v. Figueroa*, 976 F.2d 1446, 1454 (1st Cir. 1992) ("admission [of 'other acts' evidence] to corroborate matters significant to the prosecution's case has been held proper").

■ The evidence of unexplained wealth supports a reasonable inference that the defendant intended to enter into the charged conspiracies. Additionally, it has a factual nexus to the charges in the indictments. Under these circumstances, the evidence of unexplained wealth was highly relevant. Therefore, the trial court did not abuse its discretion in admitting the "unexplained wealth" evidence. *See Torrence*, 134 N.H. at 27, 587 A.2d at 1229.

*III. Excluding Witness Testimony*

The defendant next argues that the trial court erred in preventing his wife from testifying. The defendant contends that the trial court improperly excluded her testimony as a sanction for a discovery violation, and that the offered testimony may not be totally excluded by the trial court unless "counsel's behavior reveals a willful omission during discovery, motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross examination and the ability to adduce rebuttal evidence." (Quotation omitted.) *See State v. DeLong*, 136 N.H. 707, 710, 621 A.2d 442, 443 (1993).

The defendant did not include his wife on his pre-trial list of witnesses as required by the discovery rules. *See* SUPER. CT. R.

98(C). During the third day of trial, after his wife had been present in the courtroom for at least two days of trial, the defendant notified the State that his wife may be called as a witness. Following this notification, the defendant's wife was sequestered by agreement of the parties. She was once again present in the courtroom on the fourth day of trial, and the defendant represented to the court that she was not going to be a witness. Following most of the defendant's testimony on the fourth day of trial, the defendant again notified the court that his wife might be a witness.

The State objected to allowing any testimony by the defendant's wife. Initially, the court indicated it would allow the defendant's wife to testify with limitations to be "fair to the State," but, after further inquiry, the court excluded her testimony completely. In making its decision, the court first reviewed the series of events where the wife was present in the courtroom notwithstanding the court's oral sequestration order. Further, the court queried defense counsel as to the basis for the decision not to call the defendant's wife after the initial decision to use her testimony. The record reflects the following:

> THE COURT: And it was based on a discussion between you and [the defendant] that it was — the election was made not to use her as a witness?
>
> [THE DEFENSE]: Yes, Your Honor.
>
> . . . .
>
> [THE DEFENSE]: It was based on a discussion between he and I — um — that led me to believe that he would be competent to give the necessary testimony and that her testimony would not be necessary.
>
> THE COURT: Okay. So the election was made with his consent and input?
>
> [THE DEFENSE]: Yes, it was, Your Honor.
>
> THE COURT: And clearly the two of you were aware, including him, that there was an issue about the money in the safe deposit box at the time that issue was made.
>
> . . . .
>
> And all the other issues you talked about actually . . . that were in this case.
>
> [THE DEFENSE]: Yes, Your Honor.

THE COURT: So would it be fair to say that decision was made as trial strategy?

[THE DEFENSE]: Yes, Your Honor . . . .

THE COURT: Then, the State's objection is sustained.

Nowhere on the record does the court state that it decided to exclude the witness based on a violation of the discovery rules. The record does, however, reflect the court's consideration of the defendant's unfair advantage if he were allowed to call a witness who had been excluded from the witness list, and then permitted to listen to the testimony in open court simply because the defense vacillated on the decision whether to call that witness.

We have said that witness testimony offered by a defendant may be "excluded in the case of a willful omission during discovery, motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence." *DeLong*, 136 N.H. at 710, 621 A.2d at 443 (quotation omitted). Courts in other jurisdictions permit exclusion of testimony where there is no willful discovery violation, but, nevertheless, the trial court found potential for fabricated testimony, and the integrity of the adversary process and the interest of fair and efficient administration of justice militated against permitting such testimony. *See United States v. Johnson*, 970 F.2d 907, 910 (D.C. Cir. 1992). We agree these types of risks justify excluding a witness from testifying.

Considering the defendant's failure to include the witness on his discovery list and the violation of the oral sequestration order, it is clear that concerns similar to those articulated in *Johnson* guided the trial court in its decision to exclude Mrs. Sonthikoummane's testimony.

*Affirmed.*

With respect to the opinion issued October 31, 2000, JOHNSON, J., sat for oral argument but retired prior to the final vote; THAYER, J., sat for oral argument but resigned prior to the final vote; BROCK, C.J., and BRODERICK, J., concurred. With respect to the order dated April 3, 2001, on the motion for consideration, BROCK, C.J., and BRODERICK, NADEAU and DALIANIS, JJ., concurred.